WESLEY MANDEVILLE, as Receiver, etc., Appellant, *v.* EDWARD H. AVERY, Impleaded, etc., Respondent.

A chattel mortgage not accompanied by immediate delivery or followed by an actual or continued change of possession of the chattels mortgaged, and which was executed upon an agreement that the mortgagor may remain in possession and sell the property and use the avails in substantially the same manner as before the execution of the mortgage, is void as against the creditors of the mortgagor.

The term "creditors" includes all persons who were such while the chattels remained in the possession of the mortgagor under the agreement, and their rights are not affected by the fact that they did not obtain judgment or a specific lien until after delivery of the property to the mortgagee.

The right of the creditor to collect his debt out of the mortgaged chattels may not be defeated by the mortgagee, simply by selling the property.

An assent by a creditor to such an arrangement between the mortgagor and mortgagee, which would preclude him from asserting his rights as

a creditor against the mortgaged property, must be such as to create against him an equitable estoppel, or it must exist in agreement supported by a valid consideration.

Where an alleged assent was made upon condition that the mortgagor should return to the creditor a portion of the goods purchased of him, the purchase-price for which constituted the indebtedness, and would make payments to the mortgagee, neither of which conditions were complied with, *held*, that there was no consideration for the assent; and so, it was not binding.

A creditor may not be deprived of his legal right to attack a chattel mortgage as fraudulent by an agreement made with his agent, waiving or surrendering such right, without evidence that he knew of the defect in the mortgage, and had authorized the agent to make the agreement, or had acquiesced in it when made.

Although the mortgagee may possess an honest claim, he cannot retain, as against a pursuing creditor, property obtained by him under his mortgage if it is fraudulent; and although he took and sold the property by virtue of the mortgage before any lien was obtained thereon by the creditor he may be compelled by the latter to refund the proceeds; the mortgage being void, all proceedings under it are void.

A receiver appointed in supplementary proceedings under the Code of Civil Procedure is vested with the legal title to all the personal property of the judgment debtor; he also represents the creditor under whose judgment he was appointed, and has the same right the creditor possesses to prosecute actions to set aside all transfers of property made by the debtor to defraud his creditors.

The rights of the receiver in this respect are not confined to the property fraudulently assigned; he may follow the proceeds of the sale thereof in the possession of any person not a *bona fide* owner or holder.

In an action brought by a receiver appointed in supplementary proceedings to have two chattel mortgages covering the same property executed by the debtor set aside as fraudulent, and to compel the defendant A., the mortgagee in one of the mortgages and the assignor of the other, to account for and pay over the proceeds of sale of the mortgaged property, A. pleaded the pendency of a former suit in bar. That was an action brought by A. to recover possession of the property which had been levied upon under an attachment issued in favor of the judgment creditor against the debtor. Defendant in that action justified under the attachment, and alleged "that any transfer of said goods to the plaintiff was in fraud of creditors and void." The judgment therein decided that A. was the owner and entitled to the possession of the property. This judgment was reversed on appeal, and the action was still pending. One of the mortgages was shown to be fraudulent and void. *Held*, that the pending of the former action was not a bar to a recovery of the proceeds of the property sold to satisfy the void mort-

gage; that to establish his right to recover in that action, A. was only required to prove one valid mortgage, and so, that the invalidity of the other was not necessarily involved.

*Mandeville* v. *Avery* (57 Hun, 78), reversed.

(Argued February 6, 1891; decided March 3, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made June 20, 1890, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

This action was brought to have two chattel mortgages executed by the defendant Henry J. Beck to the defendant Edward H. Avery and the National Bank of Auburn, adjudged fraudulent and void, and to require the defendant Avery to account for the proceeds of the sale of the mortgaged property and pay over to the plaintiff such part of said proceeds as was necessary to satisfy the judgment of Lewis P. Ross, a creditor of said Beck, with the costs of supplementary proceedings, etc.

The opinion states the facts.

*David Hays* for appellant. The action is maintainable by plaintiff as receiver in supplementary proceedings. (*Adsit* v. *Butler*, 87 N. Y. 585; *Lawrence* v. *Bank of Republic*, 35 id. 320; *Storm* v. *Wadell*, 2 Sandf. Ch. 494; Wait on Fraud. Conv. §§ 4, 51, 52, 61, 68; *Campbell* v. *E. R. Co.*, 46 Barb. 540; *Loos* v. *Wilkinson*, 110 N. Y. 195; *Clements* v. *Moore*, 6 Wall. 299; *Murtha* v. *Curley*, 90 N. Y. 372; *Wright* v. *Nostrand*, 94 id. 31, 43; High on Receivers, § 454; *Bostwick* v. *Mench*, 40 N. Y. 383; *Davenport* v. *McChesney*, 86 id. 242; *Parish* v. *Wheeler*, 22 id. 494.) A receiver in supplementary proceedings is entitled to maintain an action of this character under Laws of 1858, chapter 314. (R. & B. on Sup. Pro. 385; *Underwood* v. *Sutcliffe*, 77 N. Y. 58, 62; *Porter* v. *Williams*, 9 id. 142.) The question as to plaintiff's right to maintain this action as receiver, not having been taken by demurrer, was waived. (*Perkins* v. *Stimmel*, 114 N. Y. 359.)

The conclusion of the court that the transaction between Gordon and Avery was an agreement that the bank should hold the mortgage, is unwarranted. (*McClure* v. *Lockard*, 121 N. Y. 308 ; *Creque* v. *Sears*, 17 Hun, 123.) The plaintiff may be precluded from assailing the mortgage only on the ground of an equitable estoppel. (Bump on Fraud. Conv. 466; 2 Pom. Eq. Juris. 499 ; *E. F. Co.* v. *Hersee*, 33 Hun, 169 ; *Sternfield* v. *Simmonson*, 44 id. 429 ; *Iselin* v. *Henlein*, 16 Abb. [N. C.] 73; *Hays* v. *Heidelberg*, 9 Penn. St. 203 ; *Haydcock* v. *Coope*, 53 N. Y. 68, 76 ; *Stout* v. *Stout*, 77 Ind. 537; Bigelow on Estoppel, 508; *Brace* v. *Gould*, 1 T. & C. 226 ; *Sanford* v. *McDonald*, 25 N. Y. S. R. 721; *Littlefield* v. *Littlefield*, 91 N. Y. 203, 210 ; *Winegar* v. *Fowler*, 82 id. 315.) It was error to submit the question of "Assent" to the jury or to make any finding with reference thereto, because it was not pleaded as a defense. (Pom. on Rem. § 712 ; *Romeyn* v. *Sickles*, 108 N. Y. 650.) Avery's right to retain the proceeds of the mortgaged chattels depends solely upon the validity of the mortgage, and not on the good faith of his demand as a creditor of Beck. (*Quinn* v. *Hart*, 48 Hun, 393 ; *Wilson* v. *Voight*, 9 Col. 614, 619 ; *Dutcher* v. *Swartwood*, 15 Hun, 31; *Stimson* v. *Wrigley*, 86 N. Y. 332, 339; *Wells* v. *Langbein*, 20 Fed. Rep. 183 ; Wait on Fraud. Conv. § 357; *Murtha* v. *Curley*, 90 N. Y. 372; *Billings* v. *Russell*, 101 id. 226 ; *Jones* v. *Graham*, 77 id. 628 ; *Coope* v. *Bowles*, 42 Barb. 87 ; *Mecham* v. *Collignon*, 7 Daly, 402.) Defendant's defense, of a former suit pending, is untenable. (*Avery* v. *Mead*, 12 N. Y. S. R. 749 ; *Dawley* v. *Brown*, 79 N. Y. 390 ; *Campbell* v. *Butts*, 3 id. 173 ; *Stillman* v. *Northrop*, 109 id. 473, 480.)

*J. C. Avery* for respondent. The plaintiff is not entitled to a new trial, because the complaint does not state facts sufficient to constitute a cause of action. (Code Civ. Pro. § 499 ; *Coffin* v. *Reynolds*, 37 N. Y. 640; *Gould* v. *Glass*, 19 Barb. 179, 186; *Tooker* v. *Arnoux*, 76 N. Y. 307; *Van Alystyne* v. *Freday*, 41 id. 174; *Schuyler* v. *Smith*, 51 id. 309 ; *Munger* v. *Shannon*, 61 id. 251.) The action cannot be maintained by

the receiver of the property of the judgment debtor. (Riddle on Sup. Proc. 121 ; *Gardner* v. *Smith,* 29 Barb. 68 ; *Steward* v. *Cole,* 43 Hun, 164.) The plaintiff cannot maintain this action against the defendant Avery, as a trustee *ex maleficio.* (Bump on Fraud. Conv. 532, 608, 609 ; *Lawrence* v. *Bank,* 35 N. Y. 321 ; *Campbell* v. *E. R. Co.,* 46 Barb. 552 ; *Bostwick* v. *Mench,* 40 N. Y. 389 ; *Underwood* v. *Sutcliffe,* 77 id. 58, 63.) The plaintiff's complaint was properly dismissed, because the undisputed proof and admissions show that all the proceeds in question were applied to the payment of *bona fide* debts of the judgment debtor, long prior to the commencement of this action. (Bump on Fraud. Conv. [3d ed.] 608 ; *Haggerty* v. *Palmer,* 6 Johns. Ch. 436 ; *Ames* v. *Blunt,* 5 Paige, 13, 24 ; *Wakeman* v. *Grover,* 11 Wend. 187 ; Bishop on Insolv. Debt. 229 ; *Averill* v. *Loucks,* 6 Barb. 470 ; 24 N. Y. 505 ; 28 id. 667 ; 3 How. Pr. 185 ; 5 Johns. Ch. 280 ; 4 Barb. 560 ; 7 Hump. 367 ; *Peacock* v. *Tompkins,* Meigs, 317 ; *Grover* v. *Wakeman,* 11 Wend. 187.) The complaint was properly dismissed, because the plaintiff had failed to prove a cause of action. (Bump on Fraud. Conv. 533, 600 ; 2 R. S. 135, § 5 ; *Gardiner* v. *Smith,* 29 Barb. 68 ; *Steward* v. *Cole,* 43 Hun, 164 ; *N. C. N. Bank* v. *Lord,* 33 id. 557 ; *Dorthy* v. *Servis,* 46 id. 628 ; *Pettibone* v. *Drakford,* 37 id. 628 ; *Southard* v. *Benner,* 72 N. Y. 424–426 ; *Sullivan* v. *Miller,* 106 id. 641.) The court made no error in its conclusion of law, that the mortgage to the National Bank of Auburn was not fraudulent and void as against the judgment of said Ross, nor the plaintiff in this action. (*Bissel* v. *Hopkins,* 3 Cow. 188 ; *Hanford* v. *Artcher,* 4 Hill, 296 ; *Frost* v. *Mott,* 34 N. Y. 256 ; Thomas on Chattel Mort. § 283 ; *Nugent* v. *Jacobs,* 103 N. Y. 125 ; *Jewett* v. *Noteware,* 30 Hun, 192–194 ; 3 Bump on Fraud. Conv. 464, 493 ; *Bolt* v. *Rogers,* 3 Paige, 154 ; *Gale* v. *Gale,* 19 Barb. 249 ; *Chamberlain* v. *Barnes,* 26 id. 160–163 ; *Gardenier* v. *Tubbs,* 21 Wend. 171 ; *People* v. *Gonzalez,* 35 N. Y. 49, 59 ; *Buck* v. *Waterbury,* 13 Barb. 116 ; *Crary* v. *Sprague,* 12 Wend. 41 ; *Krekeler* v. *Ritter,* 62 N. Y. 372 ; *Gardner* v. *Buckbee,* 3 Cow. 120.) The testimony

of the defendant Avery as to his knowledge of the intent of the bank officials was properly received. (*Sperry* v. *Baldwin,* 46 Hun, 120, 128 ; *Seymour* v. *Wilson,* 14 N. Y. 567 ; *Griffin* v. *Marquardt,* 21 id. 121.) Evidence of what was done in regard to a general assignment by Beck was admissable. (Greenl. on Ev. § 51 ; *People* v. *Gonzalez,* 35 N. Y. 49, 59 ; *Buck* v. *Waterbury,* 13 Barb. 116 ; *Crary* v. *Sprague,* 12 Wend. 41.) The evidence as to the application of the proceeds was proper. (*Smith* v. *Cook,* 3 Sandf. Ch. 333 ; *Peacock* v. *Tompkins,* Meigs, 317 ; Bump on Fraud. Conv. [3d ed.] 608.)

BROWN, J. The mortgage to the National Bank of Auburn, which was subsequently assigned to Mr. Avery, was executed January 24, 1887. The mortgage to Avery was executed February 8, 1887. As to the first mortgage, the court found that it was not accompanied by an immediate delivery, or followed by an actual or continued change of possession of the chattels mortgaged, and that it was executed upon an agreement with the bank that the mortgagor might remain in possession of the property covered by the mortgage and sell the same at retail in substantially the same manner as before the execution of the mortgage and use the avails.

Similar findings as to the Avery mortgage were refused. The court found, as a conclusion of law, that the mortgage to Avery was valid, and that the mortgage to the bank was not fraudulent and void as against the judgment of said Ross, nor the plaintiff in this action.

There was ample evidence to support the findings aforesaid, and the validity of the Avery mortgage cannot be questioned on this appeal.

The finding quoted in reference to the mortgage to the bank rendered it void as to the creditors of the mortgagee. (*Gardner* v. *McEwen,* 19 N. Y. 123 ; *Russell* v. *Winne,* 37 id. 591 ; *Southard* v. *Benner,* 72 id. 424 ; *Potts* v. *Hart,* 99 id. 168 ; *Brackett* v. *Harvey,* 25 Hun, 502 ; *Bainbridge* v. *Richmond,* 47 id. 391.) And the term creditors includes all persons who were such while the chattels remained in possession of the

mortgagor under that agreement, and it was not essential to their rights that they did not obtain judgment or a specific lien until after delivery of the property to the mortgagee. (*Stimson* v. *Wrigley,* 86 N. Y. 332; *Dutcher* v. *Swartwood,* 15 Hun, 31.)

The conclusion that this mortgage was not void as against the judgment of Ross or the plaintiff was based upon a finding that Ross, the judgment creditor, with full knowledge that the agreement in reference to the possession of the mortgaged property had been entered into, assented to such arrangement.

This finding is challenged by the appellant on the ground that there is no evidence tending to support it and whether there is or not, is the vital question in the case.

We are of the opinion that this finding cannot be sustained.

An assent by a creditor to an arrangement between the mortgagor and mortgagee which would preclude him from asserting his rights as a creditor of the mortgagor against the mortgaged property must be such as to create against him an equitable estoppel or it must exist in agreement and in such case must be supported by a valid consideration.

It could not be claimed in this case that there was an estoppel. The mortgage was executed and delivered and the illegal agreement made before Ross or his agent knew of it, and there is no evidence and no claim that Mr. Avery did any act to his own prejudice or adopted any line of conduct by reason of anything said or done by Ross or on his behalf.

Nor was there any valid agreement. Without stating in detail the evidence, it appears that Beck when he applied to Ross to sell him goods, informed him that Mr. Avery, who was president of the bank, was to loan him one thousand dollars to be used in his business without security. Ross inquired of Avery by letter if that statement was true and Avery replied that he had agreed to help him to the extent of one thousand dollars.

Ross understood this as an affirmative answer to his question, and made the sale. Soon after the mortgage was given, Ross learned of it and sent his agent, Gordon, to Auburn to inquire

about it.   He called on Avery and asked him why he took the
mortgage after it was understood that the loan was to be with-
out security.   Avery told him that Beck had offered to give it,
as he had used some of the money loaned him in paying incum-
brances on his property, and that the bank would let him go
on as if no mortgage had been made.   Gordon replied that if
Beck would continue in business and pay Ross a little now and
then he would be satisfied, and that Beck had some of the goods
which Ross had sold him which were out of season, and if he
would return them he would have credit.   Avery said that
any arrangement that Gordon made with Beck about payment
or return of the goods would be satisfactory to him.

This conversation took place on February third, and on Feb-
ruary eighth Beck gave Avery another mortgage whereupon
he immediately took possession of the stock in the store and
proceeded to sell it out under both mortgages.

There is no evidence in the case that Gordon had any
authority from Ross to make an agreement to waive or sur-
render his right to attack the mortgage as fraudulent, or that
the fact of such an agreement ever was communicated to him
or that he acquiesced therein if it was told to him, and none
that he ever knew, prior to the commencement of this suit, of
the agreement between the mortgagor and mortgagee which
rendered the mortgage void.

I think a creditor could not be deprived of his legal rights
as a result of an agreement made with his agent without some
evidence that he knew of the defect in the mortgage, and had
authorized his agent to make an agreement in reference thereto
or had acquiesced in it when made, and this case is barren of
any evidence tending to show any of these facts.

But it is not necessary to rest our decision on that ground.

Assuming Gordon to have had full authority to negotiate
with Avery and make the arrangement testified to, there was
no consideration for the agreement.

The only consideration claimed is in the implied promise of
Avery to release from the lien of his mortgage the goods that
Beck should return to Ross, and the payments that he would

make to him presumably out of the proceeds of sales at the store.

But no payments were ever made and no goods were returned, and the mere promise to release in case Beck returned the goods, did not constitute a consideration. It was conditioned solely upon Beck's action, and could become operative and binding only in case the goods were returned and payments made. It would be a remarkable proposition that Ross could be held to his contract in consideration of the return of goods never delivered to him and payments on account of his claim never made. The agreement, if it may be called such, was conditioned solely upon acts of Beck which were never performed.

Moreover it does not appear that Gordon expressed himself as satisfied that the bank should hold the mortgage, but with the statement of Avery that the bank would let Beck go on with the business. Avery testified that he told Gordon that it was his desire that he (Beck) should continue, and he saw no reason why he should not; that there was no disposition by the bank to injure him or press him, and that he hoped he would go on and continue in business and pay his liabilities; that it was for the interest of all parties that he should go on and finish his work and make it valuable, and that Gordon said "that would be satisfactory to him." If this was evidence of a contract it certainly meant that Avery would not enforce the mortgage, and assuming that Gordon knew that the agreement between the bank and Beck rendered that instrument void as to creditors, he might very well have expressed his satisfaction with the situation. Both parties were thus left in their original situation with reference to each other. Neither had preference over the other, and both relied upon the business to repay their debts, and this is all that, in my judgment, can fairly be inferred from the testimony.

The judgment must, therefore, be reversed, unless the other points made by the respondent can be sustained.

It is claimed that the plaintiff as receiver cannot maintain this action.

A receiver appointed in supplementary proceedings under the Code is vested with the legal title to all the personal property of the judgment debtor, and has the further right to prosecute actions to set aside all transfers of property made by the debtor to defraud his creditors.

For the purpose of maintaining such actions he represents the creditors and possesses the same rights as the creditor under whose judgment he was appointed would himself have had. (*Becker* v. *Torrance,* 31 N. Y. 631; *Bostwick* v. *Menck,* 40 id. 383; *Wright* v. *Nostrand,* 94 id. 31.) And his rights in this respect were not confined to the assigned property, but he could follow the fund or proceeds of the sale thereof into the possession of any person not a *bona fide* owner or holder thereof.

If the creditor could have secured a levy by execution upon the mortgaged property before a sale thereof, the fraudulent mortgagee could not have held the property against the sheriff. (*Brewing Co.* v. *Hart,* 48 Hun, 393; *Sperry* v. *Baldwin,* 46 id. 120; *Stimson* v. *Wrigley,* 86 N. Y. 332.)

The right to collect the debt out of the mortgaged property could not be defeated by the mortgagee simply by selling the property.

The same right that existed against the property would exist in favor of the creditor against the proceeds of the sale in the possession of the mortgagee, and an action to reach such a fund would be maintainable either by the creditor or by a receiver appointed in supplementary proceedings under the judgment. To hold otherwise would be to decide that the beneficial provisions of the statute could be defeated by a fraudulent mortgagee or vendee by merely selling the assigned property, and as this could in the great majority of cases be done before a judgment could be obtained by the creditor, and a levy made, the statute would be practically annulled. (*Dutcher* v. *Swartwood,* 15 Hun, 31.)

The General Term, however based its decision upon the ground that the debt to the bank having been a valid one and having been paid out of the mortgaged property before any

lien was obtained thereon, another creditor could not compel the mortgagee to refund the money on the ground that as against creditors generally the mortgage given to secure the paid debt would have been adjudged void.

Two classes of cases are cited by that learned court to sustain this conclusion.

First, those holding that an assignee acting under a void assignment will not be held accountable for such of the proceeds of the assigned property paid out by him to creditors in pursuance of the assignment before any other creditor has obtained a lien upon the assigned property.

Second, that the objection that a chattel mortgage is void is not available, when, before any creditor had questioned its validity, the mortgagor delivered the chattels to the mortgagee and authorized an immediate sale thereof by him.

I am unable to see that the first class of cases has any application to the facts before us.

As to the second, there is no doubt as to the right of a debtor to prefer any creditor and to pay his debt in full, either in money or property, to the exclusion of all others.

But to apply that principle to this case, is to ignore completely the facts pleaded and found by the court. There was no claim that the property sold was turned over by Beck to Avery in payment of the debt. The complaint alleged that the property was sold by Avery under the mortgage, and this fact was not denied by the answer. The court also found that Avery, by virtue of both mortgages, took possession of the mortgaged property, and as such mortgagee caused the same to be advertised at public sale and sold under said mortgages.

There is nowhere any suggestion in the evidence or findings that the mortgage was waived or abandoned, or that the debtor had voluntarily delivered the property to Avery with authority to sell it.

Everything that was done was pursuant to and under the mortgages. Avery could not and did not claim to have received the property or the proceeds of the sale in payment of his debt as the voluntary act of the debtor, but as mortgagee.

He cannot, therefore, assert against the claim of other creditors the honesty of his own debt. The mortgage being void, all proceedings under it were void, and although he may possess an honest claim, he cannot retain property obtained by him under a fraudulent mortgage against a pursuing creditor. The proceedings taken to collect the debt are unlawful. (*Murtha* v. *Curley*, 90 N. Y. 372; *Billings* v. *Russell*, 101 id. 226–231; *Wells* v. *Langbein*, 20 Fed. Rep. 183.) It is further claimed that the judgment in the case of *Avery* v. *Mead* was a bar to this action. That was an action brought by defendant to recover possession of the mortgaged property from the sheriff, who had levied upon it under an attachment issued in favor of Ross and against Beck.

It appeared upon the trial that the judgment in that action, which was set out in the answer and which adjudged Mr. Avery to be the owner and entitled to the possession of the mortgaged property, had been reversed and a new trial granted, but the court found as a fact that the action was still pending.

We may, therefore, treat the defense as a plea of a former action pending. To sustain such a plea it must appear, from the pleadings in the first action, that it was for the same cause as the second or involved necessarily the same question. It is not enough that the same property is in controversy in both actions. (*Dawley* v. *Brown*, 79 N. Y. 390.)

The complaint in *Avery* v. *Mead* alleged that on February 16, 1887, the plaintiff was lawfully possessed of the property therein described, which was the mortgaged property, and that the defendant wrongfully took said property from the plaintiff.

The defendant justified under an attachment issued in the suit of *Ross* v. *Beck*, and alleged that the goods levied upon by him were the property of Beck, and "that any pretended transfer of said goods to the plaintiff was in fraud of creditors and void."

We need not speculate what result might follow the trial of that action. It is plain that to succeed in his defense the sheriff would necessarily be compelled to establish the invalidity of both of the mortgages held by Mr. Avery.

But it was not essential to Avery's success that he should establish the validity of both.

The right to the possession of the mortgaged property could have been successfully asserted under the second mortgage, and the validity of the mortgage to the bank did not, therefore, necessarily come in issue.

Avery might have recovered possession of the mortgaged property in the action against the sheriff, and not be able to sustain the validity of the bank mortgage.

In other words, the validity of the bank mortgage, which is the sole inquiry here, was not necessarily involved in the action against the sheriff.

Hence the pendency of that action was not a defense to this.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except FOLLETT, Ch. J., dissenting, BRADLEY and HAIGHT, JJ., not sitting.

Judgment reversed.