Adams, J.
Upon the former trial of this case at the circuit, I ■was impressed with the idea, that however much the defendant Avery had laid himself open to the charge of perpetrating a legal fraud as respects the rights of the creditors of his co-defendant Beck, there was nothing in his conduct towards them which was •culpable from a purely moral standpoint. In other words, it appeared without substantial contradiction that in all that was done by him as president and representative of the National Bank of Auburn, he had constantly in mind the success of the mortgagor Beck in his business enterprise, and while endeavoring, as was his •right and duty, to protect the interests of his bank, he was at the ■.same time striving to give Beck an opportunity to realize from his business and pay his creditors.
This impression has been strengthened somewhat by the addi-. tional evidence taken upon the last trial, and were it not for one feature of the case which seems, within the authorities and within *2 the decision of this case by the court of last resort, to characterize the bank mortgage as fraudulent and void, I should have no hesitation in reaching the conclusion that the defendant Avery-had established a perfect defense to the plaintiff’s cause of action.
He testifies that the chattel mortgage executed by Beck to-the National bank was drawn by him and was given to secure a loan negotiated through him; and that the entire transaction was had with him ; that the loan was a bona fide one for the full amount expressed in the mortgage and that no part had been paid; all of which evidence is virtually conceded to be true.. Moreover, he says that in making the loan and taking the mortgage in the manner he did, he had no intention of defrauding any creditor of Beck, and in one sense, I think it fair to assume that, in saying this he spoke the exact truth; for his subsequent conduct shows that whatever construction the law may place upon his acts, there was, as has already been suggested, no moral wrong-intended. When the plaintiff heard of the existence of the mortgage and sent his agent Gordon to ascertain what it meant, there-was no attempt at concealment or equivocation on the part of the defendant; on the contrary he told, him frankly what he had done and why he had. done it, and so impressed was Gordon with-the propriety and integrity of the defendant’s conduct, that he expressed his approval thereof and presumptively, at least, made a. favorable report to his principal of what he had learned respecting the bank mortgage. It was undoubtedly upon this assumption, accompanied by the further fact that several days elapsed before any dissent was expressed by Ross, that it was held upon the-former trial that he had acquiesced in Avery’s arrangement with Beck, that the latter might retain possession of the mortgaged property, and that, with full knowledge of all the facts, having thus acquiesced, he could not now be heard to say that, as to him, the mortgage was fraudulent and void.
However, the question of acquiescence or estoppel has been eliminated from the case, and it only remains to be seen whether, upon the facts as they now exist, the defendant can be said' to-have placed his bank in a position where it can not avail itself of its mortgage security, or in other words, whether the mortgage of January 24, 1887, was executed upon the agreement or understanding between Beck, the mortgagor, and the bank, the mortgagee, that the former might remain in possession of the mortgaged property and dispose of it in substantially the same manner as before the execution of the,mortgage. This question was submitted to the jury upon the first trial and was answered by them in the affirmative. When the case came before the court upon its equity side, this conclusion of the jury was adopted and it was subsequently reaffirmed by both the general term and the- court of appeals ; the latter tribunal saying there was ample evidence to sustain the finding, 124 N. Y., 376; 36 St. Rep., 338, so that unless the additional evidence furnished upon the last trial in some appreciable manner varies or modifies that which was given upon the trial at circuit, it must be held that this question is practically res adjudicata.
*3 I have already said that such evidence does tend to strengthen the impression which was at first produced, respecting the defendant's fraud from a strictly moral standpoint; but can it be said that, with the other facts in the case, it so strengthens his position that the conclusion heretofore reached by the courts and jury is not the reasonable and proper one in a legal sense?
To answer this question intelligently it will be profitable to recapitúlate very briefly the undisputed facts of the case, which may be thus stated: The National Bank of Auburn, upon the 24th of January, 1887, took from the defendant Beck a chattel mortgage upon his stock of boots and shoes, and materials and machinery, for the manufacture thereof, in the city of Auburn, to secure a loan of $1,150, made by him some time previous to that date. The execution of this ■ mortgage was not accompanied by any immediate delivery or followed by any actual or continued change ■of possession of the property mortgaged; on the contrary, the mortgagor was permitted to remain in possession of such property and to sell the same, precisely the same as he had done prior to the execution of the mortgage, without any interference whatever upon the part of the mortgagee, for the period of about fourteen •days, or until February 8th, when another mortgage was given to Avery to secure an individual claim, following which Avery assumed possession of and control over the property. It is true, .and this is the new evidence in the case, that Beck and his wife both worked in the store, making and repairing boots and shoes, and that a considerable portion of their trade was the result of what is termed “ custom workthat at the time of the execution of the bank mortgage, Avery ascertained from Beck that he would require fifteen dollars per week for living expenses, he and his wife ordinarily earning twice that sum from their “ custom workand that it was thereupon agreed 'that he might retain out of the avails of the business as a whole the sum of fifteen dollars per week, the balance to be employed in reducing his indebtedness. It does not appear what amount of goods was sold, or how much money was realized under this arrangement, nor what proportion of the amount realized during these fourteen days was from “custom work,” and what from' the sale of stock. Neither does it appear what, if anything, was paid to any of Beck’s creditors; nor indeed who his creditors were, aside from those who figure in this controversy.
The evidence does show, however, that a considerable portion of the property was sold, and that none of the avails thereof was applied toward the reduction of the mortgage debt or that owing to the plaintiff; and Gordon swears that Avery told him he did not know what had become of them. This is denied by Avery, but he does not furnish any information as to their disposition. To this evidence must be added the declaration of Avery that the bank did not intend to interfere with Beck, but designed that he should continue his business, and thus have an ..opportunity to recover from his embarrassment. The motive for this arrangement, it is true, may have boon disconnected with any real, actual, fraudulent intent, and yet if there was no immediate delivery or *4 change in .the possession of the mortgaged property, and if the-mortgagor was permitted to manage and sell the same practically for his own benefit, as I think must be held was the fact, the-necessary result of- such an arrangement was to cover up all the property of the mortgagor, and thus to hinder and delay his creditors in the collection of their claims; and, inasmuch as a party is-presumed to have foreseen and intended the necessary consequences of his own act, it follows that, if those consequences defraud another out of any just right, the law pronounces him guilty of a fraud. Babcock v. Eckler, 24 N.Y., 623-632; Coleman v. Burr, 93 id., 17-31. Had the arrangement been simply that the mortgagor was to remain in possession of the mortgaged property with permission to sell the same and apply the avails upon the mortgage-debt, it would have been one not inconsistent with an honest intent. Ford v. Williams, 24 N. Y., 359; City Bank v. Westbury, 16 Hun, 458. But unfortunately for the defendant, such was not. the case, and therefore no other conclusion can be reached than that the bank mortgage was fraudulent and void as to the creditors of Beck. Brackett v. Harvey, 91 N. Y., 214; Potts v. Hart et al., 99 id., 168.
Upon the final submission of this case, several propositions were-urged upon the attention of the court, which had not before been presented. I have examined them all with care, but without being able to satisfy myself that they aid the defendant. The' claim that the admission of title by the plaintiff in the case of Avery v. Mead is fatal to a recovery in this action, proceeds upon the theory that the defendant had been put to an election of" remedies, at least that is the theory upon which the case of Terry v. Munger, 121 N. Y., 161; 30 St. Rep., 746, cited as an-authority, was decided; but one obvious answer to this contention is that the admission was made for the purpose of saving rights involved in another action long after this action had been at issue, and it is, therefore, difficult to perceive how it operates-as an estoppel.
Another point raised confessedly depends for its correctness-upon the fact that Avery took possession of the mortgaged property under his own mortgage exclusively; but this is not the fact, It is true that he took possession on the 9th of February, and that the bank mortgage was not assigned to him until a month later, so that counsel is quite correct in insisting that he could not have taken possession of the property under the bank mortgage as its owner, but he could have taken possession on behalf of the bank, and that is precisely what he swears he did do, in-an affidavit made on the 18th of February, to be used upon a motion to vacate an attachment; and the notice of sale establishes; most conclusively that the property wag sold upon the bank mortgage, as well as upon that of A very.
It seems, therefore, that from whatever point of view this caséis examined we are necessarily confronted by the question of the-validity of the bank mortgage, and with that question determined adversely to the defendant, there is nothing left for him to rest, his defense upon.
*5 The only remaining question which requires any consideration pertains to the award of costs, and this is not altogether free from embarrassment. The case is one. in which the matter of costs, rests in the discretion of the court, and this discretionary power embraces the entire costs of the action, notwithstanding the order of the court of appeals, which grants a new trial, “ with costs to-abide the event.” First Nat. Bank v. Fourth Nat. Bank, 84 N. Y., 469. The final event is a judgment in which neither is wholly successful, for it adjudged the Avery mortgage valid. At first blush, therefore, it would seem a proper case for denying costs to either party, Law v. McDonald, 9 Hun, 23, and such would be the direction 'if each step in the litigation had been attended with the same result, but until the decision of the court of appeals the defendant had been successful as to the entire issue.
It appears that the decisions of the lower courts were erroneous, and plaintiff was in consequence thereof put to the expense of an appeal. This being the case, I fail to see why he should not be awarded costs ■ up to the last trial; but inasmuch as the result of that trial is in exact accordance with the decision of the court of appeals, it would seem to be a proper exercise of the discretionary power of the court to deny costs to either party for all proceedings subsequent to the order granting a pew trial
J. 0. & 0. L Avery, for app’lt; David Hayes, for resp’t
Lewis, J. This action has been twice tried, and the questions in it quite thoroughly litigated.
On an appeal from the judgment entered upon the first trial, substantially all the questions involved in the action were settled in favor of the plaintiff by the decision of the court of appeals, reported in 124 N. Y., 376; 36 St. Rep., 338. The opinion of the trial justice, printed, in the case, leaves very little to be said by this court in deciding this appeal.
The plaintiff claimed in his complaint that the defendant had in his hands moneys realized from the sale of personal property under two chattel mortgages held by defendant, which the plaintiff claimed to be fraudulent and void, and plaintiff sought to recover the moneys by virtue of a lien upon the property by. an attachment. The facts entitling the plaintiff to relief were fully set out in the complaint, and the plaintiff, upon the facts proven, was entitled to the relief demanded in his complaint
One of the defenses interposed by defendant was a judgment entered"in a replevin action adjudicating that the defendant Avery was the owner of the property covered by his mortgages. At the time of the first trial j udgment had not been entered in the replevin action.
The j udgment was thereafter entered, but upon appeal to the general term of this court it was reversed, and thereafter, and before the second trial, j udgment was again entered in said action in favor,of the plaintiff therein.
The judgment was entered some two years after the answer interposed in this case, so that the judgment which the defendant sought to avail himself of was not pleaded. If it was to be used *6 in bar of this action, it should have been pleaded by a supplemental answer. Hendricks v. Decker, 35 Barb., 298.
The defendant in his replevin action claimed to own and to be entitled, to the possession of the property involved in that action by virtue of two chattel 'mortgages; one for the sum of $290, which was concededly valid ; and one for $1,000, which has been adjudicated to be void.
They both covered the same property. He was in a sense the; owner, and was entitled to the possession of the property by virtue of his valid mortgages.. The replevin suit did not necessarily involve the legality of the thousand dollar mortgage. 124 N. Y., supra.
“ Where a judgment may have proceeded upon either or any of two or more different and distinct facts, the party desiring to avail himself of the judgment as conclusive evidence upon some particular fact must show affirmatively that it went upon that fact or else the question is open for a new contention.” Lewis v. O. N. & P. Co., 125 N. Y., 341-348; 34 St. Rep., 973.
In the absence of evidence to the contrary we must assume that the replevin action adjudicated that appellant’s title and right of possession were by virtue of the valid mortgage, and the judgment could not be used aS evidence against the plaintiff’s claim-to the surplus moneys held by him after the payment of his valid mortgage.
The trial court, we think, properly disposed of the question of costs.
We fail to see any reason for a reversal of the judgment. It should be affirmed, with costs.
Dwight, P. J., and Macomber, J., concur.