H. Clifford Spurr, as Receiver of the Property of Mervin Hall, Judgment Debtor, Respondent, v. Mervin Hall and Others, Defendants; Judson C. Pisher, Appellant.

*Chattel mortgage of hay — when not void because of an accompanying permission by the mortgagee to the mortgagor to feed the hay to his horses.*

The fact that upon the delivery of a chattel mortgage covering an undivided one-half of a quantity of hay situated upon a farm occupied by the mortgagor, the latter obtained permission from the mortgagee to feed from the hay five horses kept on the farm, two of which belonged to the owner of the farm, and three to the mortgagor himself, two of the latter being covered by a chattel mortgage held by the mortgagee, and that at least four of these five horses were fed from the hay until the mortgagee took possession of it — a period of a month — during which time they consumed about three dollars' worth, does not render the mortgage void as against a receiver of the property of the mortgagor, appointed in supplementary proceedings after the hay had been sold by the mortgagee, and the proceeds had been applied to the payment of the mortgage, particularly where it does not appear that the judgment creditor extended credit to the mortgagor in the belief that the hay was free from incumbrances.

Appeal by the defendant, Judson C. Pisher, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 30th day of September, 1898, upon the decision of the court, rendered after a trial at the Monroe Special Term.

The action was commenced on the 9th day of May, 1898, to set aside as fraudulent and void a chattel mortgage executed by Mervin Hall to the defendant Judson C. Pisher, which was dated on the 12th day of July, 1897, and to recover the property covered by said mortgage.

It appears that the defendant Hall was the owner of an undivided one-half interest in a quantity of hay, and in the growing crops upon the farm of one Willard Peck, in the town of Parma, and that he was also the owner of some growing crops on the farm of one Hezekiah Peck, in said town. For the purpose of securing the sum of $156.50, the amount of Hall's indebtedness to the defendant Pisher, on the 12th day of July, 1897, he executed a chattel mortgage to him, covering the property in question. At the time

the defendant Hall was living upon the Peck farm, where the hay in question was situated.

Previously, and on the 9th day of December, 1896, to secure, another sum of money which the defendant Hall owed to the defendant Pisher, he executed another mortgage, covering horses, cows, farming tools, and some crops on what is known as the Royce farm. The mortgage of July 12, 1897, is the one which is the subject of controversy here, and the mortgage of December 9, 1896, is not attacked or involved and need not be referred to, except incidentally.

At the time the mortgage of July 12, 1897, was executed and delivered to the defendant Pisher, the evidence shows that the mortgagor Hall said to the mortgagee Pisher, speaking in reference to the hay, " I will have to feed out of it," to which Pisher answered, " Of course." It is claimed on the part of the plaintiff that that conversation constituted an agreement by which the mortgagor was entitled to devote the mortgaged property to his own use, and that, therefore, the mortgage is null and void, and the trial court so found, although the court found that there was no intent on the part of either the mortgagor or mortgagee to hinder, delay or defraud the creditors of the mortgagor.

On the 27th day of January, 1897, the McCormick Harvesting Machine Company recovered a judgment against the defendant Hall for $170.44, being the amount which he owed for harvesting machinery. Execution was issued upon said judgment, and was returned unsatisfied. About the 11th day of July, 1897, the McCormick Company foreclosed a chattel mortgage which it held on the harvesting machinery owned by the defendant Hall, and a sale of the property was had thereunder.

On the 20th day of July, 1897, the McCormick Harvesting Machine Company instituted supplementary proceedings on its judgment against Hall, and such proceedings were had that, on the 21st day of September, 1897, the plaintiff was appointed receiver of all the property of the defendant Hall. On the 9th day of December, 1897, the receiver demanded of the defendants Hall and Pisher that they turn over to him the property covered by the mortgage dated July 12, 1897, or the proceeds thereof. This they refused to do, and this action was commenced.

The learned trial court found that, at the time of the execution of the mortgage in question, the defendant Hall was indebted to the defendant Pisher in the sum of $156.50, and that the mortgage was executed to secure the payment of such sum; did not find that it was given with fraudulent intent, but found that, as matter of law, it was void because of the agreement or understanding above referred to, and had between the mortgagor and mortgagee at the time of the execution of said mortgage. ,

There is nothing in the record to indicate what was intended to be done with the mortgaged property by the parties to the mortgage by the alleged verbal agreement, except what is shown by the words used, and the subsequent action of the parties in respect to the mortgaged property.

It appears that upon the farm occupied by the mortgagor, and where the mortgaged hay was, the mortgagor had five horses, two of which belonged to Peck, the owner of the farm, and the owner of an undivided one-half of the hay; two of the other three horses were covered by the mortgage of December 9, 1896, owned by the defendant Pisher, and the other or remaining horse was owned by the mortgagor. It appears that these five horses were fed out of the hay about a month, and until the mortgagee took possession of the property and sold the same under the mortgage, and it appears that not to exceed one-half ton of the hay was fed out. Whether the horse owned by the mortgagor and not covered by the mortgage was fed out of the mortgaged hay, or out of the hay owned by Peck, does not definitely appear; but it does appear that not to exceed three dollars worth of hay was consumed by all the horses after the execution and delivery of the mortgage.

Within a month after the delivery of the mortgage the mortgagee took possession of the property; sold it at public auction in the ordinary manner, and applied the proceeds to the payment of the mortgage debt.

*Frank M. Goff*, for the appellants.

*Marvin W. Wynne* and *W. E. Davis*, for the respondent.

McLENNAN, J.:

It is well settled that a verbal agreement made at the time of the execution and delivery of a chattel mortgage, by which the mort-

gagor may apply the mortgaged property, or the avails thereof, to his own use, renders the mortgage void as against creditors. (*Hangen* v. *Hachemeister*, 114 N. Y. 566 ; *Mandeville* v. *Avery*, 124 id. 376.)

This rule, however, should be applied, if possible, in a reasonable manner, and not in such a way that some slight mistake or oversight, or some trivial permission or license in respect to the use of the property, may destroy an otherwise valid security, when the parties thereto acted in entire good faith and without intent to hinder, delay or defraud creditors.

If a farmer should give a chattel mortgage upon all his hay to secure an honest indebtedness, it would hardly be contended that an agreement with the creditor that he, the mortgagor, might feed his team of horses their dinner out of the hay, would render the security void. Certainly not if the same creditor also had a mortgage on the horses, and was as much interested in having them fed and properly cared for as was the mortgagor.

In the case at bar it appears that two of the five horses which were fed out of the hay belonged to Peck, the owner of the farm where the property was, and that an undivided half of the mortgaged hay was owned by said Peck ; that two of the other three horses were covered by the mortgage of December 9, 1896, which was held and owned by the defendant Pisher ; and whether the remaining horse was fed out of the share of the hay which belonged to the mortgagor, or out of the share belonging to Peck, does not appear ; and, as before said, the entire amount of hay consumed did not exceed one-half ton, or three dollars in value.

So far as appears — and the language of the agreement which is complained of is susceptible of such meaning — the mortgagee simply gave the mortgagor permission to feed hay which the mortgage in question covered ; whether to one, two or five horses, does not appear, and whether such permission was to feed for a single meal, for a day, or for a longer period, does not appear. There is no evidence tending to show what the intention of the parties was, other than is expressed by the words of the agreement which is complained of.

In the case of *Brackett* v. *Harvey* (91 N. Y. 214) it was held

that a chattel mortgage is not *per se* void as to creditors because it contains a provision allowing the mortgagor to sell the mortgaged property, but requiring an accounting to the mortgagee for the proceeds and their application to the mortgage debt; nor because of the provision that he may sell on credit and take good business paper, which the mortgagee is to accept and apply on the debt; nor because of the provision which permits the mortgagor to use the proceeds in replenishing the stock, if coupled with a condition that the property so purchased shall be brought in and made subject to the mortgage lien by a renewal of the mortgage. In that case it was held that in order to invalidate a mortgage containing those provisions it was necessary to establish a fraudulent intent; that it was necessary to show that there was an agreement that the mortgagor was to apply the proceeds of the mortgaged property to his own use, and that such agreement had the conscious concurrent assent of both the mortgagor and mortgagee. The mere expectation of one party or the other is not sufficient. After discussing all the facts and circumstances disclosed by the evidence in that case, and the provisions contained in the mortgage above referred to, the court (at p. 226) says: " The whole transaction impresses us as honest and just, and we cannot assent to the conclusion that it was fraudulent and void."

Fraud cannot be presumed. It must be proven, and if there is left room for an inference of an honest intent, the proof of fraud is wanting. (*Bernheimer* v. *Rindskopf,* 116 N. Y. 428 ; *Roberts* v. *Buckley,* 145 id. 215.)

If a debtor should give a chattel mortgage upon his grocery stock and fixtures to secure a just debt, it would not render such instrument void if an agreement or understanding was had between the parties thereto by which the mortgagor was at liberty to use the soap, scrub brushes, brooms, etc., out of such stock, which were necessary to keep the store and stock clean and in proper condition for sale.

The case of *Smith* v. *Cooper* (27 Hun, 565), relied upon by respondent's counsel, is easily distinguished from the case at bar. In that case the court states that the agreement complained of in effect was that the mortgagor " should dispose of and deal with the property as he saw fit, transmuting the mortgaged articles either directly into stock or indirectly into money, and then purchasing

new stock with the money, and that such new stock should be substituted as to plaintiff's lien in the place of stock disposed of." Under that agreement and strictly within its terms, the court says: "By all the sales and transmutations permitted the mortgagor, not one dollar of the mortgage debt has been discharged, and this though one-third of the stock is disposed of and all the grain and wood has been consumed or sold."

In that case it was held, and we think properly so, that the agreement rendered the mortgage void, and the acts of the parties clearly show that the intention of the parties in making such agreement was fraudulent, and that it was made with intent to hinder, delay and defraud the creditors of the mortgagor.

In the case at bar, construing the evidence most favorably to the respondent, the entire property, with the exception of not to exceed one-half ton of hay, worth not to exceed three dollars, was taken possession of by the mortgagee within a month after the mortgage was executed. The property was sold at public auction in the regular way, and the entire proceeds were applied in payment of the mortgage debt, and this was all done before the plaintiff was appointed receiver, and before the judgment creditor had acquired any lien upon the property, or had made any demand for it. It does not appear that credit was given by the judgment creditor to the mortgagor upon the strength of the mortgaged property, or believing that it was free and clear from incumbrances, and so far as appears the only intent and purpose in giving the mortgage was to secure the payment of an honest debt which the defendant Hall owed to the defendant Pisher.

Under those circumstances and upon all the evidence disclosed by the record in this case, we are unable to hold that the mortgage was void on account of the agreement or permission made or given at the time of the delivery of such mortgage, and which is above referred to.

The judgment should be reversed and a new trial granted, with costs to the appellants to abide the event.

All concurred.

Judgment reversed and new trial ordered, with costs to the appellants to abide event.