entered into between Sawdy and the defendant the amount due the plaintiffs was conceded to be $375, and that by executing this agreement the defendant had virtually determined the extent of his own liability. In this we think the learned trial justice fell into error, for upon the trial it was not contended by either party that the amount specified in the agreement as the possible balance due the plaintiffs was anything more than an approximation thereof. Indeed, the plaintiffs, in their complaint, admitted that a much less amount was due them, and their complaint was obviously framed upon the theory that the amount alleged to be due from the defendant was due because it represented lumber and material used in the Sawdy buildings; and, in this view, it is not at all material what the defendant and Sawdy supposed such balance to be, for by the terms of the agreement entered into between them the obligation of the former was limited to the payment of such sum only as might be found due the plaintiffs for lumber and material actually used in the construction of these two buildings, and when the plaintiffs seek to avail themselves of a contract to which they are not parties, but which it is claimed was made for their benefit, they should be held to a pretty rigid observance of the rules of pleading and evidence. The question as to which party must sustain the burden of proof is an important one, for it involves a substantial right; and its improper determination constitutes reversible error. Whitlatch v. Casualty Co., 149 N. Y. 45, 43 N. E. 405; Bank v. Judson, 122 N. Y. 278, 25 N. E. 367; Heinemann v. Heard, 62 N. Y. 448; Parrish v. Publishing Co., 6 App. Div. 587, 39 N. Y. Supp. 540. In this case we think it was improperly determined, and that for that reason a new trial should be ordered.

Order reversed and motion for new trial granted, with costs to the appellant to abide the event. All concur.

---

(55 App. Div. 515.)

CASTLEMAN v. PRYOR et al.

(Supreme Court, Appellate Division, Fourth Department. November 20, 1900.)

1. MORTGAGES—FRAUD.

    A mortgagee loaned the mortgagor $300 on December 12th and $250 on December 28th, and on December 31st a mortgage for $2,000 was executed, dated December 12th, reciting that it was to secure the loans made, and any other money that might grow due from advances made to the mortgagor to enlarge his business. Both testified that the stock covered thereby was worth over $1,000. *Held,* in an action against the mortgagee by subsequent judgment creditors for proceeds of the foreclosure, that there was evidence sufficient to sustain a finding that the mortgage was not given with fraudulent purpose.

2. SAME—FAILURE TO FILE—PURPOSE.

    Where parties to a mortgage both testified that it was kept from the files in order to allow the mortgagor whose stock of goods was covered by the mortgage to obtain a partner with capital, the evidence was sufficient to sustain a finding, in an action by a creditor against the mortgagee for the proceeds of the foreclosure, that the mortgage was not kept from the file with fraudulent purpose.

**3.** SAME—DELIVERY.

    Immediately after the execution of a mortgage on a stock of goods and fixtures the parties went through a form of delivery of the property, the mortgagor delivering the key, and the mortgagee claiming to take possession; but the key was redelivered, and the mortgagor continued the business without his employés or the public being aware of the change. *Held*, that there was no delivery, the transactions being merely colorable.

**4.** SAME—SUBSEQUENT LIEN CREDITORS.

    Under Laws 1833, c. 279, § 1, providing that a mortgage is void as against creditors unless filed or accompanied by delivery, a creditor cannot enforce any right conferred by the statute until he recovers a judgment, and is in a position to acquire a lien on the property. Hence where it did not appear that the mortgagor's creditor had acquired any lien by his judgment, and the mortgagee apparently made a bona fide sale of the property to pay the amount honestly due under the mortgage, he was ·not liable to the creditor for the proceeds. ·

    Spring and Williams, JJ., dissenting.

Appeal from trial term, Monroe county.

Replevin by J. W. Castleman, receiver, against Samuel V. Pryor and Charles W. Mayer. From a judgment for defendants, plaintiff appeals. Affirmed.

    This action was brought by the receiver of two judgment creditors of defendant Mayer to have an agreement in the nature of a chattel mortgage, made by the judgment debtor to defendant Pryor on the 31st day of December, 1896, adjudged fraudulent and void as against Mayer's· creditors, and to compel Pryor to account for the proceeds of the property that came into his hands thereunder. In the month of December, 1895, defendant Mayer, with a capital of $75, commenced the business of manufacturing bicycle specialties. His place of business was his father's barn, upon which he placed no sign. ·Early in December, 1896, he was financially embarrassed, but he had unfin-ished orders and considerable unmanufactured material on hand. Through his ·attorneys he met defendant Pryor, to whom he explained his circumstances, and who consented to loan the money necessary to enable him to continue busi-ness. Accordingly, on December 12, 1896, Pryor advanced $300, and $250 more on December 28th, both of which amounts were paid over in install-ments by the attorneys, upon the understanding, however, that the money was shortly to be repaid, or security was to be given therefor. On the 31st of the ·same month the chattel mortgage agreement was executed. acknowledged, and delivered, but dated December 12th, to cover the first loan. The substance of this agreement, so far as material to the questions presented by this appeal, is a recital that a loan was solicited by Mayer for the purpose of developing ·and enlarging the business; that the agreement was made for the purpose of ·securing Pryor to the extent of $2,000 for the money loaned, which was pay-able on demand, and for any other money, note, or other obligation that might ·thereafter grow due to Pryor from Mayer, or any damages in consequence ·thereof; that the entire stock of goods, machinery, material, fixtures, tools, appliances, patents, and book accounts were sold and assigned to Pryor, with ·the privilege of entering and inspecting at any time; that Mayer was to ac-count to Pryor for moneys received from sales of stock or merchandise, and was to purchase supplies from time to time under Pryor's direction to replenish stock; that Pryor was to have the usual chattel mortgage privilege of taking ·possession at any time, and to sell at public or private sale, and apply the pro-, ceeds to the payment of the indebtedness and expenses. On January 2d Pryor further advanced $50, which was likewise paid in installments, and $50 or $60 more, which was retained by the attorneys for legal services. The agreement was·not filed as a chattel mortgage until the 29th day of January, 1897, and it : appears from the undisputed testimony that it was kept from the files in order to avoid embarrassment to Mayer in obtaining a partner with capital or in ·forming a stock company to continue the business, as he contemplated doing. ᒐImmediately after the execution of the agreement the parties proceeded to the

place of business on the advice of attorneys on account of the agreement not being filed, and went through the form of a delivery of possession to Pryor, Mayer delivering the key, and Pryor claiming to own the business, and handing the key back to Mayer, authorizing him to continue the business as provided in the agreement. With Pryor's knowledge and consent, the transfer was purposely concealed from the employés, and Mayer transacted the business as before, using the old books and old bank account, without anything to indicate a change of ownership, but consulting Pryor with reference to expenditures of money and purchases, and rendering statements to Pryor of moneys received and paid out, and frequently submitting the books to the inspection of Pryor and his attorneys. Mayer drew from the business, with Pryor's consent, $14 per week, for his living expenses. According to Pryor, the market value of the property was about a thousand dollars, and Mayer says it was worth over a thousand dollars,—between three and five thousand dollars.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

William B. Hale, for appellant.
George H. Harris, for respondents.

LAUGHLIN, J. The learned trial justice found that the mortgage was not given or accepted with any fraudulent intent, and that the omission to file it was not for any fraudulent purpose. It is contended that from the nature of the agreement and the transactions had the contrary should have been found, but we think there is sufficient evidence to sustain these findings. Spurr v. Hall, 46 App. Div. 457, 61 N. Y. Supp. 854; Hardin v. Dolge, 46 App. Div. 416, 61 N. Y. Supp. 753; Brackett v. Harvey, 91 N. Y. 214; Bank v. Lord, 33 Hun, 557; Mitchell v. West, 55 N. Y. 107. A finding was also made to the effect that there was an immediate delivery of possession of the property to the mortgagee, and an actual, continued change of possession thereof. The correctness of this finding is also challenged by appellant. The evidence upon which it is based is undisputed, and the question narrows to what is the reasonable inference to be drawn from uncontroverted facts. We are of opinion that the delivery of possession on December 31st was only colorable. By the express terms of the agreement it was contemplated that the mortgagor should remain in possession, and the evidence not only fails to show any open or public change of possession (Crandall v. Brown, 18 Hun, 461; Steele v. Benham, 84 N. Y. 634), but, on the contrary, indicates that the change of ownership and possession were intentionally concealed from the public. We think that the finding of delivery and change of possession was not warranted, but, having reached the conclusion that the judgment should be affirmed notwithstanding, it becomes unnecessary to consider the evidence on this point further. On the 26th day of January, 1897, Mayer, at the request of Pryor's attorneys, voluntarily delivered the key back, and Pryor took possession, and later on the same day turned the property over to the sheriff, with authority to sell the same under the mortgage. The sheriff subsequently sold the property at public auction, and it was purchased by Mayer's sister. Neither the date of such sale nor the consideration for which the property sold is stated in the evidence. The judgments upon which the receiver bases this action were recovered in the municipal court of Rochester, and transcripts thereof filed on the

4th and 19th days of February, 1897, respectively. There being no finding of fraud, the mortgage is unaffected by the Revised Statutes (2 Rev. St. [1st Ed.] p. 136, §§ 5, 6), and is valid unless it comes within the condemnation of section 1 of chapter 279 of the Laws of 1833, which provides as follows:

"Every mortgage, or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed," etc.

It is not essential that a party be other than a general creditor at the time when the mortgage was given, but, of course, he cannot enforce any right by virtue of this statute until he recovers a judgment, or obtains a warrant of attachment, and is in a position to acquire a lien upon the mortgaged property. Until that time, for all practical purposes, at least, the mortgage remains valid as to him. Stephens v. Perrine, 143 N. Y. 476, 39 N. E. 11; Mandeville v. Avery, 124 N. Y. 376, 26 N. E. 951; Karst v. Gane, 136 N. Y. 316–320, 32 N. E. 1073; Button v. Rathbone, Sard & Co., 126 N. Y. 187, 27 N. E. 266; Jones v. Graham, 77 N. Y. 628; Kitchen v. Lowery, 127 N. Y. 59, 60, 27 N. E. 357; Thompson v. Van Vechten, 27 N. Y. 568; Crouse v. Schoolcraft, 51 App. Div. 160, 64 N. Y. Supp. 640. We are of opinion that the court of appeals did not intend to decide in the later cases of Stephens v. Britannia Co., 160 N. Y. 178, 181, 182, 54 N. E. 781, Sheldon v. Wickham, 161 N. Y. 500, 55 N. E. 1045, that a general creditor at the time of giving the mortgage could not obtain relief under the statute by subsequently becoming a judgment creditor before the property is sold or appropriated under the mortgage. On January 26, 1897, and prior to the recovery of these judgments, the mortgagor voluntarily surrendered possession of the property to the mortgagee. The mortgage being valid between the parties, the mortgagor could then have lawfully turned the property over to the mortgagee in payment of the indebtedness, or as security therefor, regardless of the mortgage; and, in that event, those who were general creditors only at that time could not reach the property without first paying the amount honestly owing to the mortgagee. Hardt v. Deutsch, 30 App. Div. 589, 52 N. Y. Supp. 335; Sheldon v. Wickham and Stephens v. Britannia Co., supra; Parshall v. Eggert, 54 N. Y. 18; Tremaine v. Mortimer, 128 N. Y. 1, 27 N. E. 1060; Bowdish v. Page, 153 N. Y. 104, 47 N. E. 44; Schwarzschild & Sulzberger Co. v. Mathews, 39 App. Div. 477, 57 N. Y. Supp. 338. Although the possession was demanded and taken under the mortgage, that would not affect defendant's rights, since possession was thus voluntarily delivered at a time when the debtor had a right to turn the property over to his creditor as security for the indebtedness. But there is no finding or evidence that any lien was ever obtained by virtue of these judgments, and, for aught that appears in the record, the property was sold to a bona fide purchaser, and sufficient of the proceeds paid to the mortgagee, and appropriated by him to the payment of the indebtedness owing to him, before the judgments were recovered. De-

fendant Pryor has not now the possession of the property, and he has only been reimbursed therefrom the amount actually advanced by him in good faith to Mayer. No lien having been acquired, and defendant's transactions having been free from fraud, plaintiff is entitled to no relief against him. Kitchen v. Lowery, 127 N. Y. 53–59, 27 N. E. 357; Bank v. Lord, 33 Hun, 557–564. See, also, other cases herein cited. It follows, therefore, that, notwithstanding this erroneous finding, the judgment must be sustained, as the finding was not essential thereto. The judgment appealed from should be affirmed, with costs.

ADAMS, P. J., and McLENNAN, J., concur.

SPRING, J. (dissenting). The chattel mortgage was not filed, and there was no transfer of possession to the mortgagee. However free from culpability the mortgagee may have been, the mortgage was void as against existing creditors of the mortgagor. Laws 1833, c. 279, § 1; Stephens v. Perrine, 143 N. Y. 476, 39 N. E. 11. The claims need not be reduced to judgment to be within the protection of this statute. As was said in Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073 (at page 323, 136 N. Y., page 1075, 32 N. E.): "A simple contract creditor is as much within the protection of the statute as a creditor whose debt has been merged in a judgment." The creditor, of course, must have his judgment before he can assail the mortgage; but that is simply a necessity to its enforcement. The judgment relates back in its remedial effect anterior to the void mortgage if the claim antedated that instrument. In the present case the mortgagee demanded possession of this property, and it was surrendered to him on the 26th of January 1897. The demand was made and possession given by virtue of the mortgage, and the sale made by the sheriff was pursuant to that instrument. It is clear that, though the mortgage be void, the debtor may turn out the property to the mortgagee as a creditor to pay his debt. Bowdish v. Page, 153 N. Y. 104, 47 N. E. 44; Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073. That is not this case, for the surrender was made in pursuance of a void mortgage, and the sale was founded upon that instrument. In the one case the mortgage is ignored, and the transfer made regardless of it. In this case the parties acted upon the assumption that the mortgage was valid, and possession and title were acquired solely through it. The two cases are vastly different. Stephens v. Perrine, 143 N. Y. 476, 39 N. E. 11.

It is contended that, as the case does not show any lien was acquired by virtue of the judgment and that apparently the sale was to a bona fide purchaser, no relief can be had. The purchaser at the sale is not a party. The mortgagor and the mortgagee are the only defendants. Whatever money was paid to the mortgagee came through the sale under the void mortgage. That the avails paid his debt puts him in no better light, for that would be all he could get anyway. If the doctrine of the prevailing opinion is to stand, he is as fully protected as if the property had been turned out to him in payment of his debt, disregarding the mortgage. To reach the

money acquired by the mortgagee it is not necessary that the actual lien be acquired before the sale, but, when the judgment creditor seeks to assert his lien, he must be in a situation to maintain it. Here judgments were rendered, executions were issued and returned unsatisfied, and the plaintiff was appointed receiver in proceedings supplemental to execution; all of which were steps preliminary to the commencement of the action. They were all made with the purpose to attack this mortgage, and there was no delay in their prosecution. The sale might be made under the void mortgage before the debt is due, or before any levy can be made or lien perfected. It cannot be that, because the mortgagee has been swift to sell the property, he is absolved from attack. He has made a sale by virtue of an instrument which is within the condemnation of the statute, and he should account for what he has received, and that is all which can be accomplished in this action.

In Stephens v. Perrine, 143 N. Y. 476, 39 N. E. 11, which is an action closely akin to this, no lien was acquired at the time of the sale. The preliminary procedure had been complied with, as in this case. The general term had held that a lien must be secured before the mortgagee obtained possession and sold the property. The court of appeals decided this holding was error, and in commenting upon it say (at page 480, 143 N. Y., page 12, 39 N. E.):

"The mortgage, as to the creditors of the mortgagor, was always void. It continued to be void notwithstanding the fact that the mortgagee assumed to take possession under, and to sell the property by virtue of, such void instrument. * * * This action is against the mortgagee, and I cannot see the force of the reasoning which, while admitting that the mortgage is void as to creditors, nevertheless asserts that a title to the property covered by it may be obtained by the mortgagee by proceedings taken under it, and which assert the validity of such instrument, provided they are taken before the creditors are armed with a judgment and execution so as to enforce their rights which rest upon the validity of the mortgage. If void, what right has the mortgagee, as against creditors, to take possession in her character of mortgagee, and to sell or dispose of property described in it? Clearly, she has none, and she does not acquire any by the celerity of her movements in seizing and selling property under it."

It is possible that the purchaser at the sale, if unaware that there were existing creditors, may be secure in his title. But the mortgagee, who is not innocent, but a wrongdoer, within the ban of the statute, cannot invoke the sale, made in the face of impending attack from the creditors, to protect himself in his illegal acts. He did not file his mortgage, and is responsible, therefore, for the situation which avoids it. The fact that a sale has been made is never a protection to the wrongdoer, and the money he receives always stands in lieu of the property, and can be reached in equity. The court say in Mandeville v. Avery, 124 N. Y. 376, 26 N. E. 951 (at page 385, 124 N. Y., page 953, 26 N. E.):

"The right to collect the debt out of the mortgaged property could not be defeated by the mortgagee simply by selling the property. The same right that existed against the property would exist in favor of the creditor against the proceeds of the sale in the possession of the mortgagee, and an action to reach such a fund would be maintainable either by the creditor or by a receiver appointed in supplementary proceedings under the judgment. To hold

otherwise would be to decide that the beneficial provisions of the statute could be defeated by a fraudulent mortgagee or vendee by merely selling the assigned property; and as this could, in the great majority of cases, be done before a judgment could be obtained by the creditor, and a levy made, the statute would be practically annulled."

This is a suit in equity, and the receiver can maintain it. Cases last cited; Stephens v. Britannia Co., 160 N. Y. 178, 54 N. E. 781.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

WILLIAMS, J., concurs.