## In re BEEDE.

### (District Court, N. D. New York. June 5, 1905.)

1. **BANKRUPTCY—LIENS—VALIDITY—WHAT LAW GOVERNS.**

   The validity of a chattel mortgage as a lien on a bankrupt's assets as to all the parties is a local question, and must be determined by the decisions of the state courts.

2. **SAME—FAILURE TO FILE—EFFECT.**

   Where a chattel mortgage was executed and delivered in good faith, but was not filed within a reasonable time, as required by statute, and the mortgagor was permitted to retain possession of the property, the mortgage, under the law of New York, was void as to all creditors of the mortgagor then existing, or who became such while the mortgage remained unfiled, except as between such creditors and bona fide purchasers of the property for value.

3. **SAME—JUDGMENTS.**

   Where a chattel mortgage executed and delivered in good faith was not filed within a reasonable time, as required by the state law, nor until two days prior to the mortgagor's adjudication in bankruptcy, both creditors of the bankrupt who had acquired judgments and issued executions thereon prior to such adjudication, and those having claims accruing while the mortgage was not filed, and prosecuted to judgment and execution after adjudication, suit having been commenced prior to the institution of the bankruptcy proceedings, were entitled to urge the invalidity of such mortgage, and to a prior lien on the proceeds of the sale of the mortgaged assets, as against the mortgagee and his assignee, who took same after the adjudication in bankruptcy as collateral security to a real estate mortgage given by the mortgagee long before.

4. **SAME—BANKRUPTCY PROCEEDINGS—EFFECT.**

   The filing of a petition in bankruptcy against the mortgagor, and his adjudication as a bankrupt, did not prevent creditors having claims prior to the filing of the mortgage from proceeding to reduce the same to judgment and obtain execution thereon, suit having been commenced prior to the filing of the petition in bankruptcy.

5. SAME—JUDGMENTS—LIENS.

Bankr. Act July 1, 1898, c. 541, § 67, subds. "a," "b," 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], providing that claims which, for want of record or for other reasons, would not have been valid liens as against the claims of creditors of a bankrupt, shall not be liens against his estate, and that whenever a creditor is prevented from enforcing his rights as against a lien created or attempted to be created by his debtor, who afterwards becomes a bankrupt, the trustee of the estate of such bankrupt should be subrogated to and may enforce such rights of such creditor for the benefit of the estate, apply to judgments obtained by creditors of a bankrupt subsequent as well as prior to adjudication, in cases where the action to procure a judgment had been commenced prior to the institution of bankruptcy proceedings.

6. SAME—TITLE OF TRUSTEE—EFFECT.

A bankrupt's trustee is not a "purchaser," and the transfer to him by operation of law of mortgaged personal property does not extinguish the right of creditors to assert the invalidity of the mortgage, for nonfiling, as to the mortgagee and his assignee.

7. SAME—RIGHTS OF TRUSTEE—SUBROGATION.

Where a chattel mortgage executed by a bankrupt and delivered was void as to creditors obtaining judgments against a bankrupt, both before and after adjudication, for failure of the mortgagee to file the same within a reasonable time, the bankrupt's trustee was subrogated to the rights of such judgment creditors, as against the holder of the mortgage, and was therefore entitled to the proceeds of the mortgaged property for the benefit of the bankrupt's estate.

In re N. Y. Economical Printing Co., 110 Fed. 514, 49 C. C. A. 133, considered and distinguished. The dictum of that case not followed. In re Ducker (C. C. A., 6th Circuit) 134 Fed. 43, 46, 47, approved and followed.

This is a controversy between the assignee of a mortgagee of Orlando Beede, the bankrupt, his trustee in bankruptcy, and certain creditors of said bankrupt who have obtained judgments against him since the filing by him of the petition in bankruptcy, as to the rights of the parties to the proceeds of the sale of the personal property of said bankrupt. The amount in controversy is over $12,000. See 126 Fed. 853.

S. L. Wheeler, for John M. Wever, assignee of mortgagee.
Pyrke & Dudley, for creditors.
Stokes & Owen, for trustee.

RAY, District Judge. The facts in this case, so far as the legal questions now involved are concerned, are easily understood. Orlando Beede, the bankrupt, was extensively engaged in the lumber business and in running two stores. Prior to March, 1901, he became badly involved financially, but his condition was known to himself only, if to himself. In fact, he was insolvent. He was borrowing money on notes and giving notes, and his brother Fletcher S. Beede became his indorser to an amount in excess of $30,000. As security for such indorsements, Orlando gave to his brother, March 23, 1901, a chattel mortgage covering substantially all of his personal property. The giving of this mortgage was not known, except to the parties thereto, and it was not filed or recorded until October 10, 1901, about seven months subsequent to its date, execution, and delivery. It is evident that Fletcher S. knew of the purpose of Orlando to file a petition in bankruptcy when he

filed the mortgage. In August and September, 1901, and within four months of the adjudication, Orlando Beede gave to Fletcher S. Beede bills of sale of this personal property for the same consideration named in the mortgage, but no claim is made under them. Two days after the filing of the mortgage, and October 12, 1901, on his own petition, said Orlando Beede was adjudicated a bankrupt. Prior to the filing of the petition and the adjudication in bankruptcy several judgments were duly obtained and duly docketed against said Orlando Beede, in favor of certain creditors, to the amount of about $5,943.85, and these are unpaid. Executions thereon were duly issued prior to such adjudication. The same day of the adjudication one Payne obtained and docketed a judgment against Orlando Beede for the sum of $5,494.26, and soon thereafter, in actions commenced before the petition in bankruptcy was filed, other judgments to the amount of $7,648.31 were perfected, filed, and duly docketed against said Orlando Beede. All of these judgments were upon debts of the said Orlando Beede existing prior to the giving of the mortgage, and during the nonfiling thereof, or which were incurred after it was given and before it was filed. John M. Wever held a mortgage on certain of the real estate of said Fletcher S. Beede, and on or about the 11th day of April, 1902, several months after the adjudication in bankruptcy, Fletcher S. Beede —he having paid certain notes of Orlando—assigned the said chattel mortgage to said Wever as collateral security to his said real estate mortgage, to the amount of $7,500. The chattel mortgage was not given to hinder, delay, or defraud creditors, and there was no agreement to keep it from the files or to keep it secret. The mortgaged property was not taken possession of by the mortgagee, but remained in the possession of the mortgagor at the time of the adjudication, and passed to the hands of the trustee when he was appointed. It was thereafter sold for the sum of $12,806.34, under an agreement that such sale should in no way affect the lien of the mortgage, if a lien, but that such proceeds should stand in place of the mortgaged property. Such agreement also submitted to this court the decision of the rights of the parties, the same as if an action had been brought for the purpose.

Wever concedes the prior right of the execution creditors who had obtained judgments and issued execution prior to the adjudication in bankruptcy. Of such prior judgments, the owner thereof, to the amount of $3,284.46, also the owner of the Payne judgment, has filed the following waiver in open court: "I waive all claim, as owner of the assignments of three judgments which I have offered in evidence, to the chattel mortgage put in evidence being void for want of filing." Wever claims $7,500 of the proceeds. If such waiver is valid as to the trustee and creditors, there is enough money, after paying the other prior judgments, to give Wever the $7,500 in full. The trustee and the creditors with judgments obtained subsequent to the adjudication assert that such waiver is inoperative and void, and that the liens of all the prior judgments attach to the proceeds, and inure to the benefit of the estate, and not

to the benefit of such creditors solely. They assert that such chattel mortgage being void as to such execution creditors, and the judgments having been obtained within four months of the bankruptcy, the lien is a preference, which may be enforced by the trustee for the benefit of the estate, or at least the trustee may recover the amount of such judgments for the benefit of the estate. The creditors with judgments obtained and docketed after the adjudication (actions commenced before) assert that, having judgments and executions, the liens thereof, in equity, attached to the property, and now attach to the proceeds thereof, as against Fletcher S. Beede, mortgagee, and John M. Wever, his assignee, the same as the judgments obtained prior to the adjudication, all taking precedence to the mortgage. They assert that, as to the mortgagee and his assignee, they are creditors armed with judgments and executions, and that the bankruptcy of Orlando Beede, the mortgagor, did not operate to suspend, impair, or extinguish their rights or remedies as against the mortgagee; that is, to proceed to judgment against Orlando Beede, and issue execution, and assert the invalidity of the chattel mortgage as to them for the reason it was not filed. They assert that Orlando Beede could not in effect validate as against them a mortgage which was always void as to them, for nonfiling, by filing a petition in bankruptcy, or, by so doing, suspend, extinguish, or defeat their rights to proceed against the property and mortgagee and his assignee. They assert that the filing of such mortgage two days before the filing of the petition in bankruptcy did not change the rights of the parties. They most strenuously protest that their rights as against Fletcher S. Beede and his assignee, and their right to proceed and have the asserted lien of such assignee, claimed by him to be prior to their rights and equities, declared and adjudged null and void as to them and all creditors in a like situation, were not and are not suspended, destroyed, or extinguished by the mere act of the mortgagor in filing a petition in bankruptcy. They assert that such act is not equivalent to the act of the mortgagor and mortgagee named in a chattel mortgage, and void for want of filing, when they elect to treat the mortgage as void for that reason, and turn over the property in payment of the debt, and it is so turned over and accepted. The validity of the mortgage as to all the parties is a local question, and must be determined by the decision of the courts of the state of New York. Dooley v. Pease, 180 U. S. 126, 21 Sup. Ct. 329, 45 L. Ed. 457. As to the creditors of said Orlando Beede, the mortgage was void for nonfiling; was always void; the filing thereof two days before the bankruptcy did not validate it as to them or affect their rights; and no act or acts of Orlando and Fletcher S. Beede could validate it as against them. Stephens v. Perrine et al., 143 N. Y. 476–480, 39 N. E. 11; Brunnemer, as Receiver, etc., v. Cook & Bernheimer Co. et al., 180 N. Y. 188, 73 N. E. 19; Thompson v. Van Vechten, 27 N. Y. 568; Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073; Stephens v. Meriden Britannia Co., 160 N. Y. 178, 54 N. E. 781, 73 Am. St. Rep. 678; Southard v. Benner, 72 N. Y.

424; Mandeville v. Avery, 124 N. Y. 376, 26 N. E. 951, 21 Am. St. Rep. 678; Sheldon v. Wickham, 161 N. Y. 500, 55 N. E. 1045; Castleman v. Mayer, 168 N. Y. 354, 61 N. E. 282.

These decisions establish that the law of New York is: (1) That a chattel mortgage, there being no possession taken of the mortgaged property by the mortgagee, is absolutely void as to all creditors of the mortgagor then existing, or who may exist while such mortgage remains unfiled, except as between such creditors and purchasers in good faith for value, unless same is filed in the proper office within a reasonable time. (2) That, while such mortgage is void as to all such creditors, those creditors only who obtain a lien on the property by reducing their respective debts to a judgment and issuing execution are in a position to assert and enforce such invalidity. It is not necessary that a general creditor, to avail himself of such invalidity, have his judgment and execution before a transfer of the property is made by the mortgagor, unless made to a purchaser in good faith. (3) No act of the mortgagor or of the mortgagee, or of both together, can give validity to such an unfiled mortgage as against such creditors, including both general and judgment creditors. As between them and the mortgagor and mortgagee, it is void ab initio. (4) Even if the mortgagee takes possession of the property or takes and sells the mortgaged property under such mortgage, still such of the general creditors above specified as thereafter obtain judgment and execution may recover the property or its value, because as to them the mortgage was always void. (5) The mortgagor and mortgagee, however, may recognize the invalidity of such mortgage, and turn the property over to the mortgagee in payment of the mortgage debt, in whole or in part, but both together cannot give title as against creditors under or through the mortgage, for the reason it is invalid and void. (6) Such an unfiled mortgage is, however, good as between the parties thereto, and as to purchasers in good faith for value. And (7) such nonfiling raises no presumption of fraud. It is settled and elementary law that a creditor cannot take the property of his debtor either from him or any other person having possession and claiming it, however unfounded the claim, until he comes armed with some process authorizing the taking. It must be adjudged that he is a creditor.

This mortgage was good as between Orlando Beede and Fletcher S. Beede and his assignee, Wever. It was void as to all the creditors having judgments at the time the adjudication in bankruptcy was made. It was void as to all general creditors who were seeking to put themselves in a position to assert and enforce such invalidity, and remained void as to them notwithstanding the filing of the petition in bankruptcy, and as to them, and as between them and Fletcher S. Beede and Wever, his assignee, is still void. Stephens v. Perrine, 143 N. Y. 476, 39 N. E. 11; Brunnemer, as Receiver, etc., v. Cook & Bernheimer Co. et al., 180 N. Y. 188, 73 N. E. 19. The court in this last case says, "The authority of Stephens v. Perrine therefore stands in full force." These judgment and exe-

cution creditors now come in person, armed with lawful judgments and executions, into a court of equity, having jurisdiction of the subject-matter and of the parties, and the lawful possession of the fund, and the right to dispose of it, demanding the property or its proceeds of and as against the claim of the mortgagee and his assignee, who claim it under the alleged lien of the unfiled chattel mortgage, but which, as to these creditors, never was and is not now a lien thereon. Wever has no shadow of a claim as purchaser in good faith or for value. All these judgment and execution creditors are now in a position to assert the invalidity of such chattel mortgage, and were exercising due diligence to put themselves in that position when the petition in bankruptcy was filed. But for it, it must be conceded, they would now take the property in preference to Wever. Nothing has ever occurred to impair or impeach or extinguish the right of these creditors to assert the invalidity of such chattel mortgage as to them. It is quite true that if the mortgagor in an unfiled chattel mortgage sells the mortgaged chattels to a bona fide purchaser for value before the creditor obtains judgment and execution, such purchaser will hold in preference to the judgment creditor, because of his good faith, but in such case in no sense does the act of the mortgagor extinguish or impair the right of the creditor to impeach the alleged lien of the mortgage; that is, assert its invalidity as to himself. Should such a creditor pursue or seek to pursue the property or its proceeds in the hands of a bona fide purchaser for value, recovery would not be defeated on the ground his right to impeach the mortgage for nonfiling was extinguished, or that his right to assert its invalidity for that reason had been cut off by the act of the mortgagor, but on the ground that a purchaser in good faith and for value must for these reasons be protected.

In Sheldon v. Wickham, 161 N. Y. 500, 55 N. E. 1045, it was correctly decided that an assignee for the benefit of creditors cannot assert the invalidity of an unfiled chattel mortgage given by his assignor because of such nonfiling: First. Such assignee has no better or greater title or right than his assignor had, and, as between the mortgagor and mortgagee, the mortgage was always valid. The assignee of the mortgagor, stepping into his shoes, in the absence of some statutory authority, would not represent creditors. Second. An unfiled chattel mortgage is not a transfer in fraud of creditors. The statute does not make a failure to file a fraud, or evidence of fraud. That case holds that such an assignee is not within the enabling act of chapter 314, p. 506, Laws N. Y. 1858, providing that such assignees may disaffirm and treat as void transfers made in "fraud" of the rights of creditors, as an unfiled chattel mortgage is not made void for fraud in not filing. The question of fraud is not involved.

In Sheldon v. Wickham, supra, at page 503 of 161 N. Y., page 1045 of 55 N. E., Haight, J., in giving the opinion of the court, inadvertently, doubtless, said:

"It has been repeatedly held that such a mortgage is only void as to the persons mentioned in the statute, to wit, purchasers in good faith, and cred-

itors who are armed with some legal process authorizing a seizure of the property, and that it is valid as to the mortgagor and all other persons."

The decisions are unmistakable that an unfiled chattel mortgage is void as to all general creditors, but that those only who obtain judgments and executions can assert and take advantage of the invalidity, for until then they are not in a position, as to third persons, to assert they are creditors, or to demand or seize the property or its proceeds. If an unfiled chattel mortgage is good and valid as to a creditor who has no judgment (and it is concededly good between the mortgagor and mortgagee), why may not the mortgagee, acting in good faith, take possession and hold or sell in payment of his mortgage debt? But he cannot as against such general creditor, if such creditor subsequently obtains judgment and execution, and asserts the invalidity of the mortgage because not filed. Why? For the simple reason that as to him such mortgage was from the beginning and is absolutely void by statute. Not for fraud, but because not filed. True, the creditor cannot disturb the mortgagor or the mortgagee in his possession, etc., until he obtains judgment and execution, as until then he is not in a position to assert and enforce his right to take advantage of the invalidity of the mortgage. All this goes to the remedy. Until he has judgment it does not appear that he is a creditor. Should the Code of Civil Procedure of the state of New York provide that general creditors without judgments may take property claimed or taken by mortgagees under unfiled chattel mortgages in cases where by statute unfiled mortgages are void as to creditors, such creditors might do so in cases arising under the present statute; and if, in a given case, the mortgagee should refuse to surrender the property or its proceeds, such general creditor might bring an action, and in that suit have the question whether or not he is in fact a creditor litigated and determined. As it is, the procedure or remedy provided by law demands that the creditor first establish his claim, and the fact that he is a creditor of the mortgagor, by reducing his claim to judgment, and exhausting his remedy by execution. This done, he proceeds, not on the theory that the unfiled mortgage is void from the date of his judgment, or because he has obtained a judgment, or that its invalidity relates back (an untenable theory), but on the true theory, justified and demanded by the statute itself, and emphatically asserted by Judge Peckham in Stephens v. Perrine, supra, viz.:

"The Supreme Court has reversed the judgment for plaintiff upon the ground that, although such mortgage was void even as to existing creditors, yet, as the mortgagee filed her mortgage, and under it took possession of the property mortgaged, and sold the same by virtue of it before the creditors represented by the plaintiff had obtained any lien on the property by judgment and execution or by some other legal process, the mortgagee had the right to hold such property or its proceeds against these creditors. The court stated that the creditors, in order to take advantage of this void mortgage, by reason of a failure to file it, must not only acquire a lien upon the property by virtue of a levy or other legal process, but such lien must be had before the mortgagee has reduced the property to possession and sold it to satisfy his claim. In this holding we are of the opinion the court below erred. The mortgage, as to the creditors of the mortgagor, was always void. It

continued to be void notwithstanding the fact that the mortgagee assumed to take possession under and to sell the property by virtue of such void instrument. As between these mortgagors and creditors, it was the same as if the mortgage did not exist, and the mortgagee could not, as against these creditors, obtain any rights under it. How could a mortgagee in a void mortgage, as against creditors, obtain any title to property by virtue of such mortgage? As against them the mortgagee could not rightfully take the property by virtue of this void instrument, and if she did take it in spite of the fact that the mortgage was void and no protection to her, how could she secure any further or greater right by the sale. of the property and the receipt of its value? This action is against the mortgagee, and I cannot see the force of the reasoning which, while admitting that the mortgage is void as to creditors, nevertheless asserts that a title to the property covered by it may be obtained by the mortgagee by proceedings taken under it, and which assert the validity of such instrument, provided they are taken before the creditors are armed with a judgment and execution so as to enforce their rights which rest upon the invalidity of the mortgage. If void, what right has the mortgagee, as against creditors, to take possession in her character of mortgagee, and to sell or dispose of property described in it? Clearly she has none, and she does not acquire any by the celerity of her movements in seizing and selling property under it. Although, in order to themselves take the property, it was necessary for the creditors to have some legal process, yet, when that condition was complied with, their right to take it as between these parties became perfect. If, before any lien had been acquired by the creditors, the mortgagors had delivered the property to the mortgagee in payment of her debt, she could have then held it because it would have been in such a case a transfer of property by them in payment of their debt, and although it would have been in fact preferring such debt, yet. it would have been a preference which the mortgagors then had the right to make. But in this case there was nothing of the kind done. The mortgagee acted under and by virtue of her mortgage all the time. The mortgagors did not deliver the property to her in payment of her debt. She took it under the assumed right given by the mortgage."

At the risk of being regarded tedious I have quoted thus at length because of the remark quoted from Haight, J., in Sheldon v. Wickham, and for the further reason that the Court of Appeals, in Brunnemer v. Cook & Bernheimer Co. et al., 180 N. Y. 188–191, 73 N. E. 19, has very recently declared, "The authority of Stephens v. Perrine therefore stands in full force."

In Bowdish v. Page, 153 N. Y. 104, 47 N. E. 44, we find nothing whatever giving sanction to the claim that an assignment by the mortgagor for the benefit of creditors, or the surrender of the possession of the mortgaged property to the mortgagee, or the filing of a petition in voluntary bankruptcy, either impairs or extinguishes the right of a creditor, whether he be only a general creditor at that time or a judgment creditor, to assert and enforce the invalidity of the unfiled chattel mortgage (invalid for that reason) as against the mortgagee and his assignee, if any, when he shall have put himself in a position to assert it. That case decided this—nothing more —that:

"While the mortgagee cannot enforce a void chattel mortgage against the creditors of the mortgagor, yet, if the mortgagor treats it as void, and, before the creditors obtain a lien, transfers the property to the mortgagee in payment of a debt, the transaction will hold."

Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073, Tremaine v. Mortimer, 128 N. Y. 1, 27 N. E. 1060, and Mandeville v. Avery, 124 N. Y. 376, 26 N. E. 951, 21 Am. St. Rep. 678, all hold that, while a mort-

gagee cannot enforce a void chattel mortgage against the creditors of the mortgagor, yet, if the mortgagor treats it as void, and, before such creditors obtain a lien, transfers the property to the mortgagee in payment of the debt, the transaction will hold.

In Bowdish v. Page, supra, the mortgage had become void through the conduct of the parties with respect to the property so mortgaged, not for nonfiling of the mortgage. In this case (Bowdish v. Page) when the property was transferred in payment of the debt the creditor had not obtained a lien by judgment. The court said:

"In that situation, plaintiff's right to the goods was superior to the bank's, for it rested not upon the void chattel mortgage, but upon an independent transfer of possession by the mortgagor. Had it been otherwise, the doctrine of Stephens v. Perrine, 143 N. Y. 476, 39 N. E. 11, would have applied, and the plaintiff would have had no right to the property as against Isaac's creditors. The referee's decision in respect to the plaintiff's possession is not predicated upon the chattel mortgage, and that possession cannot be qualified by a reference to that source of title."

In Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073, it was broadly held:

"The word 'creditors' in the provision of the act of 1833 [section 1, c. 279, p. 402, Laws 1833], in reference to the filing of chattel mortgages, which provides that such a mortgage, unless filed as directed by the act, 'shall be absolutely void as against the creditors of the mortgagor,' includes creditors whose debts antedate the execution of the mortgage, as well as those whose debts were subsequently contracted. A simple-contract creditor is also as much within the protection of the statute as a creditor whose debt has been merged in a judgment."

In Stephens v. Perrine, supra, the opinion of the court emphasizes this language by quotations and approval, and says:

"The language of Chief Justice Andrews in Karst v. Gane [supra] gives no countenance to the claim made in this case. He there said: * * * This statement is perfectly true, but is no justification for the claim that the mortgagee can herself defeat these creditors by taking possession of the property under a mortgage which as to them is nonexistent."

As, in the case now before the court, Wever claims the proceeds of the property mortgaged (the same being treated as the property itself), which is in the hands of the trustee in bankruptcy, under and by virtue of the mortgage against creditors with judgments and executions, it becomes interesting to know and ascertain when and how, if ever, he became entitled thereto as against creditors, when and how these creditors lost their right on obtaining judgment against Orlando Beede to assert the invalidity of a mortgage as to which it was said by Andrews, C. J., speaking for the court, in Karst v. Gane, supra, "Such a mortgage, therefore, is not valid as against an antecedent creditor, although it was filed before the creditor acquired a lien upon the property by judgment and execution," and as to which it was said by Peckham, J., speaking for the court, in Stephens v. Perrine, supra, "The mortgage, as to the creditors of the mortgagor, was always void," and "a mortgage which as to them is nonexistent." We have seen these able and distinguished jurists were speaking of those who were "general creditors" with-

138 F.—29.

out judgments when the mortgage was given, etc., and who obtained judgment thereafter, and after the mortgagees had asserted some right under the unfiled mortgage. These judgment creditors are now in court in their own proper persons, asserting their rights. They are not represented by the trustee in bankruptcy, nor do they claim through him.

Did the filing of his voluntary petition in bankruptcy by Orlando Beede, October 12, 1901, followed by adjudication the same day, impair, suspend, or extinguish the right of his general creditors to reduce their respective claims to judgment, issue execution thereon, and thereupon assert the lien of such judgments as prior and superior to the alleged lien of a chattel mortgage held by another creditor, but which mortgage had not been filed as required by statute? We have seen that such unfiled mortgage was always void as to these general creditors. The last decision of the Court of Appeals of the state of New York speaking on this subject reasserts that· holding most emphatically. In any event, such mortgage as to such creditors became absolutely void the moment such creditors obtained their judgments. Being void for all purposes, as declared by the courts of the state of New York, the invalidity related back to the giving of the mortgage, and is to be regarded and treated as void from the very beginning. If the right of these general creditors to obtain judgment, and then assert the invalidity of the chattel mortgage as against the mortgagee and his assignee, was extinguished by the filing of the petition in bankruptcy, it must have been because of some provision of the bankruptcy act itself for which this court has searched in vain.

In re New York Economical Printing Co., 110 Fed. 514, 49 C. C. A. 133, a chattel mortgage given more than four months prior to the filing of the petition in bankruptcy had been filed properly and in due time, but the mortgagee had failed to properly refile the same, although an attempt had been made to comply with the statute in that respect. One judgment had been obtained against the mortgagor prior to the adjudication in bankruptcy. There were other creditors, but no one of such other creditors had obtained judgment subsequent to the adjudication, nor had they, so far as appears, attempted so to do. The trustee in bankruptcy raised the question of the invalidity of the chattel mortgage because of the failure to refile the same in compliance with the statute. He claimed that he was in a position to raise the question in behalf of the estate represented by him, or in behalf of the general creditors, notwithstanding the fact that these general creditors had not obtained judgment. The Circuit Court of Appeals properly held,· first, that the trustee in bankruptcy did not represent the general creditors, so as to be able to raise the question of the invalidity of the mortgage·; second, that as to the bankrupt the chattel mortgage was good, always good, and that the trustee took and represented no greater or better title or right than that possessed by the bankrupt himself. The question was not in the case, and the court was not called upon to decide, whether or not general creditors who obtain judgments and executions against the bankrupt subsequently to the filing of the

petition in bankruptcy and the adjudication may effectively assert the invalidity of a chattel mortgage, as to them, because not filed either for their own benefit solely, or for the benefit of the estate represented by the trustee in bankruptcy.

It requires no argument to show that, in the absence of an express provision authorizing a trustee in bankruptcy to bring suit in the name of a creditor against the bankrupt of whose estate he is trustee, and whose title he takes and represents (an unthinkable proposition, for it would be authorizing the trustee to sue himself), the trustee cannot be subrogated to or enforce the rights of a creditor to obtain judgment against the bankrupt, so as to assert the invalidity of an unfiled chattel mortgage in the interest of the estate. But there is no provision in the bankruptcy act forbidding the bringing and prosecution to judgment of suits against the bankrupt by his creditors to establish their claims, or forbidding the prosecution to judgment of actions pending when the petition in bankruptcy is filed. True, the bankruptcy court may enjoin the prosecution of such actions in the interest of the estate, but it is not supposed that it will so act for the purpose of depriving creditors of their rights, as against alleged lienors. If such actions are pending as they were in this case, and are allowed to proceed to judgment as they were in this case, and executions issue as in this case, such creditor at this point "is prevented from enforcing his rights as against a lien created or attempted to be created by his debtor, who afterwards" became a bankrupt. In such a case—and it is this case precisely—the creditor, now armed with judgment and execution, is prevented from seizing and selling the property on execution by reason of the fact that the court has the property in its possession, and is entitled to control and direct its disposition. But the lien, as against the unfiled chattel mortgage, is established. The bankruptcy court is bound to administer and distribute the mortgaged property or its proceeds to the general creditors, recognizing and first paying valid liens, as determined and made valid by the laws of the state, in their order of priority, unless invalidated by the bankruptcy act. That act cannot, or at least does not attempt to, create a lien in favor of any creditor or person, or to validate an invalid or void lien, made so by the law of the state, or to disturb the priority of liens. As in this case the creditors of Orlando Beede have proceeded to judgment without hindrance, and have established their claims as against him and his estate and Fletcher S. Beede and his assignee, and their lien upon and claim to the property in question is superior to that of the mortgage, which was and is void as to them because not filed, it seems to this court inevitable that it must recognize in the distribution of this fund the invalidity of the mortgage, and the superior right to the fund in question of these judgment creditors. Nothing is taken from the estate or the trustee, for, as to the estate and the trustee, primarily, the mortgage was and is good. This action by this court protects the rights of these creditors as against Fletcher S. Beede and his assignee, whose mortgage, as to such creditors, is and always was void. As to them Orlando Beede was powerless to validate the

mortgage by filing a petition in bankruptcy. Either these creditors, now armed with valid judgments, have rights to the fund in question superior to the rights of Wever, as assignee of Fletcher S. Beede, or the filing of the petition in bankruptcy extinguished the rights of the then general creditors to pursue their rights and remedies given by the laws of the state of New York against another general creditor, having an alleged lien on the property of the bankrupt, which the same laws declare and make void as to them. As before stated, I find no authority for such a proposition. It is not found in the cases cited in the Economical Printing Company Case or in the bankruptcy act. The action of a creditor in securing judgment and execution against his debtor, so as to assert the invalidity of an unfiled chattel mortgage, is not one of "vigilance," and, if he acts within the period prescribed by the statute of limitations, he is in time. He cannot bring action upon his claim until it has become due, and he is not supposed to be informed of unfiled chattel mortgages or of the intention of his creditor to file a petition in bankruptcy. Whether or not he shall have his remedy against a chattel mortgage void as to him because not filed as required by law does not depend on the volition of the mortgagor. No act of the mortgagor can validate such a mortgage, or make it a protection to himself or the mortgagee in dealing with the property, so far as creditors who thereafter arm themselves with judgments and executions are concerned. True, the mortgagor may elect to treat it as void, and turn the property over to the mortgagee in payment of the debt, in whole or in part, if the mortgagee will accept it, but this disposition of the property he may make if no mortgage were given. The mortgagor may sell the property to other parties, but with the consent of the mortgagee only. If he disposes of it otherwise, he is guilty of a crime. Pen. Code N. Y. § 571, which reads as follows:

"A person who having theretofore executed a mortgage of personal property, or any instrument intended to operate as such, sells, assigns, exchanges, secretes or otherwise disposes of any part of the property upon which the mortgage or other instrument is at the time a lien, with intent thereby to defraud the mortgagee, or a purchaser thereof, is guilty of a misdemeanor."

Hence the mortgagor cannot dispose of the property without the consent of the mortgagee, and both together cannot dispose of it by virtue of the mortgage, for as to creditors that is void.

I have no doubt that the provisions of sections 67a and 67b (Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]) apply to the case of judgments obtained by the creditors of a bankrupt after adjudication, the same as to the case of judgments obtained before. While it is the policy of the bankruptcy act to leave all valid liens obtained more than four months prior to the filing of the petition untouched, it is not its policy or effect to validate for the benefit of one creditor an instrument purporting to create a lien on the property of the bankrupt, declared to be void, in the interest of all unsecured creditors, because of the omissions of the creditors asserting the lien to comply with the provisions of law. The lien of the mortgage as against the estate of the bank-

rupt is good; that is, it will take the property from all creditors, and apply it to the satisfaction, in whole or in part, of the debt of the mortgagee, and thus deprive the creditors of their rights to assert the invalidity of such mortgage for nonfiling. If the creditors obtaining judgments are allowed, however, to take the property from the mortgagee for their sole benefit liens, or, in fact, preferences, obtained within four months are recognized, in a way. Hence the provisions of subdivisions "a" and "b" of section 67 of the bankruptcy act. These provisions permit and demand the maintenance and enforcement of the rights of creditors to overthrow such secret liens, void for nonfiling, in the interest of all the creditors.

The subdivisions of section 67 referred to read as follows:

"Liens. (a) Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate. (b) Whenever a creditor is prevented from enforcing his rights as against a lien created, or attempted to be created by his debtor, who afterwards becomes a bankrupt, the trustee of the estate of such bankrupt shall be subrogated to and may enforce such rights of such creditor for the benefit of the estate."

These subdivisions of section 67 were enacted in the broad daylight of Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816, and In re Collins, 12 Blatchf. 552, Fed. Cas. No. 3,007, which cases, broadly construed, hold the general principle that as an assignee in bankruptcy, trustee in the present act, takes the title of the bankrupt charged with all liens and equities good as against such bankrupt, a mortgage or other lien good as between the bankrupt and the holder thereof is good as against such trustee and the estate in bankruptcy, unless some provision is found in the bankruptcy act providing for the nullification of such lien. All liens obtained or given within four months of the filing of the petition are made void See section 67, Act 1898, as amended. All alleged liens voidable by creditors for want of "record or for other reasons," including filing, whenever given, "shall not be liens against his estate"—the estate of the bankrupt. Section 67a, supra. This was inserted in this act to prevent secret liens operating to defraud or even mislead creditors by reason of being secret, even if not made to hinder, delay, or defraud creditors. It was conceded in the reasoning and discussion of the general question in In re Economical Printing Company, supra, that section 67a and section 67b cover judgments obtained before the filing of the petition in bankruptcy. The reasoning of the court, although the question was not involved, and all that was said was obiter, and for that reason not binding on this court in this case, would seem to indicate that, in the opinion of the court, judgments against the bankrupt obtained after the filing of the petition and adjudication by creditors whose claims antedated the giving of the mortgage, and existed during the period of unfiling, as well as those incurred during that period, are not within the terms of sections 67a and 67b. But that opinion seems to be based on the assumption that in New York unfiled chattel mortgages are not void as to general creditors until judgment is obtained

and execution issued—an assumption .utterly at variance with the decisions .of the Court of Appeals in Karst v. Gane, Stephens v. Perrine, Mandeville v. Avery, and in the very recent case of Brunnemer v.·Cook & Bernheimer Co. et al., supra, although finding support in some of the expressions of the opinion in Stephens v. Meriden Britannia Co., supra, which, however, were not at all necessary to the decision of the case, and on the further assumption that the filing of the petition in bankruptcy extinguishes the rights of these creditors to question the validity of an unfiled mortgage.

Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986, affirming 118 Fed. 1017, 56 C. C. A. 383, affirming (D. C.) 112 Fed. 52, has nothing directly to do with the pivotal question in this case. There the trustee in bankruptcy claimed certain property for the reason that a conditional bill of sale was not filed as required by section 112, c. 418, p. 540, Laws N. Y. 1897, which provided that, if not filed as directed, such instrument should be void as against subsequent purchasers, pledgees, or mortgagees in good. faith, as to whom, in case of nonfiling, the sale should be deemed absolute. The courts—District Court, Circuit Court of Appeals, and Supreme Court of the United States—all held that the instrument was only void as to subsequent purchasers, pledgees, and mortgagees in good faith, and was good as to the bankrupt; that, as the trustee in bankruptcy took only the title of the bankrupt, and was not a purchaser, pledgee, or mortgagee, the instrument was not void for nonfiling as to him. Clearly, it was not void, but valid, as to all creditors, for they are neither "subsequent purchasers" nor "pledgees" nor "mortgagees" in good faith or otherwise.

In New York Economical Printing Company Case, supra, the Circuit Court of Appeals said:

"The bankrupt act does not vest the trustee with any better right or title to the bankrupt's property than belongs to the bankrupt or to his creditors at the time when the trustee's title accrues. The present act, like all preceding bankrupt acts, contemplates that a lien good at that time as against the debtor and as against all of his creditors shall·remain undisturbed. If it is one which has been obtained in contravention of šome provision of the act which is fraudulent as to creditors, or invalid as to creditors for want of record, it is invalid as to the trustee."

In Hewit v. Berlin Machine Works, 194 U. S., at page 302, 303, 24 Sup. Ct., at page 692 [48 L. Ed. 986], the Supreme Court quote this language, and say:

"We concur in this view, which is sustained by decisions under previous bankruptcy laws [citing cases], and is not shaken by a different result in cases arising in states by whose laws conditional sales are void as against creditors."

In the case under consideration the lien of the mortgage given by Orlando Beede to Fletcher S. Beede was not "a lien good at that time [the date of adjudication] as against the debtor and as against all of his creditors," for it was void—absolutely and concededly void—as to all of the creditors who had then obtained judgments; and it was also void as to those creditors who were in process of obtaining judgments, and whose pending proceedings ripened into

judgments a few days thereafter, for, under the decisions of the Court of Appeals of the state of New York, already cited, it is held that such a mortgage is void as to a creditor who obtains a judgment at any time. The fact that the mortgagor may sell the property to the mortgagee in payment of the debt, recognizing the invalidity of the mortgage, does not affect that proposition. The trustee in bankruptcy is not a purchaser, and the transfer to him by operation of law does not extinguish the right of the creditors to assert the invalidity of the mortgage for nonfiling as to the mortgagee and his assignee.

In re Shirley, 7 Am. Bankr. Rep. 299, 112 Fed. 301, 50 C. C. A. 252, and the recent case of Meyer Bros. Drug Co. v. Pipkin Drug Co. (C. C. A.) 136 Fed. 396, have no application here. In re Pekin Plow Co., 50 C. C. A. 257, 112 Fed. 308, Mueller v. Bruss, 112 Wis. 406, 88 N. W. 229, and In re H. G. Andrae Co. (D. C.) 117 Fed. 561, are worthy of consideration in this connection. They are in conflict with Economical Printing Co. Case, supra. This same question has been passed on by the Circuit Court of Appeals, Sixth Circuit (In re Ducker, 134 Fed. 43, 46, 47), and the holding there is in perfect accord with the views here expressed. I concur in that decision.

There is no doubt of the jurisdiction of this court to determine all these questions. In re Antigo Screen Door Co., 123 Fed. 249, 59 C. C. A. 248; In re Kellogg, 121 Fed. 333, 57 C. C. A. 547.

The creditors who have waived the question of the illegality of the chattel mortgage for nonfiling will lose nothing, as this court is satisfied that the entire fund goes to the trustee in bankruptcy for distribution to the creditors of the bankrupt who have provable claims that are proved and allowed. The invalidity of the chattel mortgage as to the judgment creditors does not inure to their benefit alone, but to the benefit of all the creditors. The trustee in bankruptcy is subrogated to their rights for the benefit of the estate.

It is so ordered.