# DULANY v. MORSE.*

BANKRUPTCY; PREFERENCES; RECORDING STATUTES; DEEDS; EQUITY; TRUSTS AND TRUSTEES.

1. An instrument, in form a deed, given as security for a loan, which, though executed more than four months previously, was withheld from record until the day preceding the filing of a petition in bankruptcy against the grantor, whose creditors had no notice of its existence, will be set aside as a voidable preference under sec. 60a of the Federal bankruptcy act, irrespective of the sufficiency of the consideration or of the good faith of the parties, where the local statute

*Bankruptcy—Preference.*—For various phases of the question as to preferences in bankruptcy cases, see the following editorial notes: Is notice, actual or constructive, of a transfer not required to be recorded or registered, necessary to start the four months' period relatively to preferences under sec. 60 of the bankruptcy act, note to *Long* v. *Farmers' State Bank*, 9 L.R.A.(N.S.) 585; when local law deemed to require the registering or recording of a transfer within the meaning of sec. 60a of the bankruptcy act of 1898 as amended by the act of 1903, notes to *First Nat. Bank* v. *Connett*, 5 L.R.A.(N.S.) 148, and *Loeser* v. *Savings Deposit Bank & T. Co.* 18 L.R.A.(N.S.) 1233; validity of transfer to secure pre-existing debt within four months of bankruptcy, in absence of any intent on the part of the debtor to hinder, delay, or defraud creditors, or of reasonable cause on the part of a creditor to believe that it was intended as a preference, note to *Coder* v. *Arts*, 15 L.R.A.(N.S.) 372; voidability of transfer within four months' period, pursuant to executory agreement antedating that period, notes to *Godwin* v. *Murchison Nat. Bank*, 17 L.R.A.(N.S.) 935, and *Sexton* v. *Kessler & Co.* 40 L.R.A.(N.S.) 639; delivery of property on eve of bankruptcy to one without executory contract therefor made within four months' period as a preference, note to *Mills* v. *Virginia-Carolina Lumber Co.* 21 L.R.A.(N.S.) 901; effect of recording within four months' period prescribed on bankruptcy act of 1898, mortgage given for a present loan or future advances, note to *Claridge* v. *Evans*, 25 L.R.A. (N.S.) 144; intent on part of bankrupt to create a preference as a condition of a voidable preference under sec. 60b, note to *Schmidt* v. *Bank of Commerce*, 33 L.R.A.(N.S.) 558.

makes a deed or mortgage effective as against creditors without no-- tice only from the time of recording it. (Citing *Fitzgerald* v. *Wynn*,. 1 App. D. C. 107.)

2. A local statute making a deed or mortgage effective against creditors. only from the time of recording it, "requires" it to be recorded so far as creditors are concerned, in the sense in which that word is used in sec. 60a of the Federal bankruptcy act, providing, with reference· to preferences within four months, that where the preferences consist, in a transfer, that period shall not expire until four months after the date of recording it, if by the law such recording is "required."

3. The right given a trustee in bankruptcy by secs. 70e and 67a and b of the Federal bankruptcy act to set aside, as a preference under sec.. 60a, a transfer which was ineffective as against creditors under a. local recording statute, is not affected by the fact that the transfer is binding as between the parties to it.

No. 2450. Submitted December 7, 1912. Decided January 6, 1913.

HEARING on appeal by the plaintiff from a decree of the· Supreme Court of the District of Columbia, holding an Equity Court, dismissing a bill filed to set aside a deed. *Reversed.*

The COURT in the opinion stated the facts as follows:

Appellant, H. Rozier Dulany, as trustee in bankruptcy of Thomas E. Waggaman, filed a bill in equity in the supreme court of the District of. Columbia to set aside a deed dated July 19, 1898, executed by Waggaman and wife to one Daniel B.. Clarke, conveying certain real estate in this District.

It appears that at the time of the execution of the deed, which· is absolute on its face, Waggaman executed and delivered to· Clarke his promissory note for the sum of $75,000, with interest at 5 per cent per annum, payable quarterly. On the same· date, and contemporaneously with the delivery of the deed and note to Clarke, Clarke executed and delivered to Waggaman: the following agreement: "I agree to hold said deed unrecorded, provided the interest on said $75,000 is paid as it matures,. and the principal thereof is paid at maturity. And upon such. payment at maturity or at the expiration of any renewal there--

of, if the same should be made, to surrender said note of $75,-
000, together with the security therefor; namely, said deed of
July 19, 1898. But should any suit or judgment be entered or
rendered against said Thomas E. Waggaman, or should he fail
to pay said note of $75,000 at its maturity, or at the expiration
of any renewal thereof, then I shall have the right to record said
deed of July 19, 1898, among the land records of said District,
and hold said property as therein conveyed." On the margin
of the note was indorsed, "Extended 1901, D. B. C.," and also
on the margin appeared the following indorsement: "Secured
by deed in escrow."

Waggaman continued in possession of the property and paid
the interest as it fell due. The deed was withheld from record,
and the whole transaction remained a secret between the par-
ties. The public was led to believe that the unencumbered title
to the property still remained in Waggaman. This situation
continued from the time of the transaction, in 1898, until the
22d day of August, 1904, when Clarke placed the deed on rec-
ord. The following day a petition in bankruptcy was filed
against Waggaman, and on September 26, 1904, he was ad-
judged a bankrupt. The court below held that this conveyance
did not create a preference in fraud of the creditors of Wagga-
man under the bankruptcy act, and from the decree dismissing
the bill this appeal was taken.

Mr. William F. Mattingly, Mr. J. J. Darlington, Mr. Samuel
Maddox, Mr. H. Prescott Gatley, and Mr. Barry Mohun for
the appellant.

Mr. Holmes Conrad and Mr. John Selden for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

In equity it is within the power of the court to inquire, either
by oral or written evidence, into the intent of the parties in
making and delivering a deed. In this instance the deed was
open to collateral attack to ascertain whether or not it was in-

tended to operate as a mortgage to secure the payment of the note. *Hughes* v. *Edwards,* 9 Wheat. 489, 6 L. ed. 142; *Peugh* v. *Davis,* 96 U. S. 332, 24 L. ed. 775. The circumstances under which the deed was executed and held by Clarke, together with the collateral agreement, reduced the deed to the legal status of a mortgage, and, as such, merely a lien against the property. When Clarke filed the deed for record, he was a creditor of Waggaman, with notice, as the evidence discloses, of Waggaman's impending bankruptcy. The mere act of recording the deed on the eve of Waggaman's bankruptcy did not strengthen Clarke's position as against the other creditors. All questions as to the good or bad faith of the parties at the date of the execution of the instrument, the sufficiency of the consideration, which was used by Waggaman to discharge outstanding indebtedness six years prior to the date of bankruptcy, and whether or not innocent persons were induced to extend credit to Waggaman in the belief that the unencumbered title to the property still remained in him, may be eliminated. It is the situation of the parties at the time the deed was recorded that becomes important. The case must stand or fall upon the single question, whether, by the delay in recording the deed, Clarke became a preferred creditor of Waggaman under the bankruptcy act. The issue presented is not one between the parties to the deed, but between appellant, as the representative of the creditors of Waggaman, and appellees, as the legal representatives of Clarke. The important inquiry, therefore, relates to the position in which Clarke placed himself with relation to the creditors of Waggaman by withholding the deed from record until the day before Waggaman went into bankruptcy.

The act of June 30, 1902 (D. C. Code, sec. 499 [32 Stat. at L. 531, chap. 1329]), provides: "Any deed conveying real property in the District, or interest therein, or declaring or limiting any use or trust thereof, executed and acknowledged and certified as aforesaid and delivered to the person in whose favor the same is executed, shall be held to take effect from the date of the delivery thereof, except that as to creditors and subsequent bona fide purchasers and mortgagees without notice of

said deed, and others interested in said property, it shall only take effect from the time of its delivery to the recorder of deeds for record." This applies also to mortgages and deeds of trust. D. C. Code, sec. 521. Sec. 499 superseded the former recording act of the District (Abert & Lovejoy's Compilation, sec. 4, p. 498), and applied not only to instruments that might be executed subsequently, but to those in existence at the time of its passage but not recorded. It is clear that the statute places no obligation upon the grantee to record a deed or mortgage for his own protection against the grantor or persons with notice, but, as suggested, it is the creditors of Waggaman without notice who are assailing Clarke's title. Against such, Clarke's only protection lay in strict compliance with the requirements of the recording act. The unrecorded deed in Clarke's possession only operated as a mortgage against Waggaman and those persons who might have become his creditors or taken title from him with notice. As to all others, the deed was of no effect. Since, therefore, the deed could only become effective against the creditors of Waggaman without notice from the date of its record, the law in force at that date, not only as to the recording of instruments, but in all other respects affecting such creditors, must be considered as governing this case.

Sec. 60 of the bankruptcy act of July 1, 1898 (30 Stat. at L. 562, chap. 541), as amended by sec. 13 of the act of February 5, 1903 (32 Stat. at L. 797, chap. 487, U. S. Comp. Stat. Supp. 1911, p. 1506), provides: "a. A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the

recording or registering of the transfer, if by law such record-
ing or registering is required."

In considering whether or not Clarke was a preferred creditor,
we think his status in relation to the other creditors imme-
diately at and before the recording of the deed becomes import-
ant. It is immaterial whether or not the bankruptcy of Wagga-
man was considered at the time of the execution of the deed.
It was intended to secure Clarke against the creditors of
Waggaman up to the date of its record, and Clarke elected to
withhold it from record until the day before the Waggaman pe-
tition in bankruptcy was filed.

The enactment of statutes requiring deeds and other instru-
ments of conveyance to be recorded is prompted in response to
the highest demands of public policy. As was said by Chief
Justice Alvey in *Fitzgerald* v. *Wynne,* 1 App. D. C. 107, 121:
"The great object of the statutes in requiring deeds of convey-
ance to be acknowledged and recorded is to prevent the practice
of fraud upon creditors and purchasers; to furnish the means
of notice and protection to innocent third parties." The re-
quirement consists in the duty imposed upon the grantee to re-
cord, or suffer the penalty prescribed by the statute of having
the instrument of conveyance declared a nullity in the interest
of creditors or purchasers without notice. Though optional
with the grantee as to certain parties, as to innocent purchasers
and creditors it is required for his protection.

At bar, great stress was laid upon the distinction made by
Congress in the enactment of the bankruptcy act of 1903. It
appears that as the bill passed the House it read: "If by law
such recording or registering is required or permitted." In the
Senate the words "or permitted" were stricken out; hence it was
argued by counsel for appellees that the recording statute of
this District is not within the provision of the bankruptcy act,
but is a mere permissive act to be availed of or not at the op-
tion of the grantee. We view the words "required" and "per-
mitted" in the connection used in the bankruptcy act as legally
synonymous, since the duty is imposed by the act upon the
grantee, not for his protection alone, but for the protection of

the creditors of the grantor. Hence, whether the local statute be construed to "require" or "permit" recording, when construed in connection with the bankruptcy act, it, in either instance, becomes a legal requirement. In *Loeser* v. *Savings Deposit Bank & T. Co.* 18 L.R.A.(N.S.) 1233, 78 C. C. A. 597, 148 Fed. 975, Judge Lurton, delivering the opinion of the court, said: "Some effect should be given to the amendment of sec. 60a if the language of the provision will permit. If 'required' be construed as applying only to a law which makes every such transfer absolutely void as to all persons, the amendment will be of no effect; for no recording statute, of which we have any knowledge, makes void transfers or conveyances as between the parties, and all of them give effect to such instruments as against some classes of persons having actual notice. The amendment would be idle, and the evil sought to be remedied would flourish as before, and the legislative purpose be frustrated. * * * The word 'required,' as used in the amendment, refers to the character of the instrument giving the preference or making the transfer, without reference to the fact that as to certain persons or classes of persons it may be good or bad according to circumstances. If to be valid against certain classes of persons, the law of the State 'requires' the constructive notice of registration, it is a transfer which under the amendment is 'required' to be recorded. This takes account of the purpose and policy of recording acts, remedies the evil which flourished under the law before the amendment, gives effect to the plain purpose of Congress, and gives some effect and force to a provision which would otherwise be meaningless. * * * If the instrument giving the preference is one which is 'permitted' to be recorded in order to give it validity as against certain classes of persons, though perfectly valid without record as to other classes, it is an instrument 'required' to be recorded within the meaning of the word as there used. The words 'required' and 'permitted' in the connection used are of synonymous legal meaning."

The recording act of this District is not different from similar acts in most of the States. Where the requirement consists in a provision that, for failure to record, the conveyance shall

be void as to purchasers and creditors without notice, it has
been held to come within the terms of the bankruptcy act. *First
Nat. Bank* v. *Connett,* 5 L.R.A.(N.S.) 148, 73 C. C. A. 219,
142 Fed. 33; *Re Klingaman,* 101 Fed. 691; *Re Shirley,* 50 C.
C. A. 252, 112 Fed. 301.

The bankruptcy act, taken as a whole, must be construed in
view of the evil it was sought to remedy. Congress had in mind
not only the speedy and inexpensive winding up of the bank-
rupt's estate, both for his benefit and the benefit of his creditors,
but more especially to prevent the bankrupt from creating a
preference in favor of one or more creditors, whereby they could
secure more than their *pro rata* share of the proceeds of the as-
sets, and thereby prevent a just distribution among the other
creditors. It was with this in view that the provision forbid-
ding preferences was inserted. The law would be a nullity if a
person on the verge of bankruptcy could have outstanding se-
cret, unrecorded conveyances, of which his general creditors had
no notice, and, by simply executing such conveyances more than
four months prior to his going into bankruptcy, escape the pen-
alty imposed by the act for failure to record. As was said by
the court in *Re Dismal Swamp Contracting Co.* 135 Fed. 415:
"Once let it be understood that conveyances made within four
months of bankruptcy can be successfully attacked, while those
made in pursuance of a pre-existing bona fide agreement will be
upheld, and the entire policy of the bankrupt law, in so far as
it undertakes to specify the time within which preferences can
and cannot be assailed, will be frustrated and destroyed. The
door for fraud would be left wide open, and creditors would
never know when they were safe in dealing with the estates of
their debtors. A condition, alike destructive of the interest of
creditors and bankrupts, would be brought about, and a harvest
for dishonest debtors afforded."

We are of opinion that the withholding of the deed from
record until the day before the petition in bankruptcy was filed
created a preference under the act of 1903. The deed had no
more effect than a mortgage. Until recorded, it was void as to
the creditors of Waggaman without notice, and the filing of it

for record the day before the petition in bankruptcy was filed did not validate it as to the creditors, or affect their rights. *Re Beede,* 138 Fed. 441. The requirement, however, in the bankruptcy act of 1903, that conveyances shall be recorded more than four months prior to the bankruptcy of the grantor in order to successfully escape the doom of the preferred creditor, applied equally to the bankruptcy act of 1898, of which the present law is amendatory. *Re Great Western Mfg. Co.* 81 C. C. A. 341, 152 Fed. 123; *Re Ronk,* 111 Fed. 154; *Morgan* v. *First Nat. Bank,* 76 C. C. A. 236, 145 Fed. 466.

This brings us to the last material contention of appellees, which is, that the trustee in bankruptcy is without standing in court to assail the invalidity of this conveyance in the interest of the creditors. It is urged that the trustee simply stands in the place of the bankrupt; hence, as the conveyance in question could not have been assailed by Waggaman, its validity cannot be questioned by the trustee. The bankruptcy act, as well as the decisions interpreting it, are against the contention. Sec. 70e of the original act imposes upon the trustee the power and duty of avoiding "any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided." Sec. 67a provides that "claims which, for want of record or for other reasons, would not have been valid liens as against the claims of the creditors of the bankrupt, shall not be liens against his estate;" and sec. 67b, "whenever a creditor is prevented from enforcing his rights as against a lien created, or attempted to be created, by his debtor, who afterwards becomes a bankrupt, the trustee of the estate of such bankrupt shall be subrogated to and may enforce such rights of such creditor for the benefit of the estate." Unless the express terms of the act are to be disregarded, the trustee is made the representative of the creditors, and may call in question any transaction which might be assailed by the creditors. Indeed, if it is not so, the plight of the creditors in bankrputcy is worse under the supposed protection afforded by the act than without it, for many of the avenues of relief which the law affords a creditor against a debtor are closed when the assets of the debtor pass into the hands of his

trustee in bankruptcy. While it is undoubtedly true that "the trustee takes the property, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it," and that he "simply stands in the shoes of the bankrupt" (*Thompson* v. *Fairbanks,* 196 U. S. 516, 49 L. ed. 577, 25 Sup. Ct. Rep. 306; *York Mfg. Co.* v. *Cassell,* 201 U. S. 344, 50 L. ed. 782, 26 Sup. Ct. Rep. 481), it is equally true that he is vested with power to contest liens and conveyances which are void as to creditors, although they may be valid as against the bankrupt. *First Nat. Bank* v. *Staake,* 202 U. S. 141, 50 L. ed. 967, 26 Sup. Ct. Rep. 580.

The court, in interpreting the scope of sec. 70 of the bankruptcy act of 1898, as amended by the act of 1903, in the case of *Security Warehousing Co.* v. *Hand,* 206 U. S. 415, 51 L. ed. 1117, 27 Sup. Ct. Rep. 720, 11 Ann. Cas. 789, said: "By sec. 70a, the trustee in bankruptcy is vested by operation of law with the title of the bankrupt to all property transferred by him in fraud of his creditors, and to all property which, prior to the filing of the petition, might have been levied upon and sold by judicial process against him; and by subdivision (e) of the same section the trustee in bankruptcy may avoid any transfer by the bankrupt of his property, which any creditor of the bankrupt might avoid, and may recover the property so transferred, or its value. Here are special provisions placing the title to the property transferred by fraud, or otherwise as mentioned, in the trustee in bankruptcy, and giving him the power to avoid the same." The court in its opinion in this case distinguished the cases of *Thompson* v. *Fairbanks* and *York Mfg. Co.* v. *Cassell,* supra, and applied the law relative to the duty of a trustee in bankruptcy to a state of facts apposite to those in the case at bar, leaving no doubt as to the duty and authority of the trustee to prosecute actions in behalf of the creditors to set aside conveyances or transfers of property by the bankrupt wherein a preference in fraud of creditors has been created.

We are therefore of opinion that the conveyance in question operated only as a mortgage; and though the element of bad

faith did not enter into its execution, it stood, within the period of four months before the bankruptcy of Waggaman, merely as an unrecorded lien upon the property described therein, still in the possession of Waggaman, and, as such, constituted in law a preference in fraud of the other creditors. Though valid as between the parties it was void as to the creditors, and the trustee was the proper party to bring this action to establish its invalidity. *Knapp* v. *Milwaukee Trust Co.* 216 U. S. 545, 54 L. ed. 610, 30 Sup. Ct. Rep. 412.

The decree is reversed, with costs, and the cause remanded with instructions to enter a decree as prayed for in the bill.

*Reversed.*

Motion made January 23, 1913, to continue receivership and stay the issuance of mandate, was granted February 3, 1913, Mr. Justice VAN ORSDEL delivering the opinion of the Court.

It is ordered by the court that the decree of this court entered herein on January 6, 1913, be, and the same is hereby, modified so as to require the continuance of the receivership below, pursuant to the consent decree of January 18, 1907, pending any appeal herein to the Supreme Court of the United States.

And it is further ordered that the issuance of the mandate in this cause be, and the same is hereby, stayed until further order of court.

On February 4, 1913, and on application of appellees, an appeal to the Supreme Court of the United States was allowed.